COMMISSIONER OF INTERNAL REVENUE *v.*
GLENSHAW GLASS CO.

No. 199.   Argued February 28, 1955.—Decided March 28, 1955.

*Solicitor General Sobeloff* argued the cause for peti-
tioner.   With him on the brief were *Assistant Attorney
General Holland, Charles F. Barber, Ellis N. Slack* and
*Melva M. Graney.*

*Max Swiren* argued the cause for the Glenshaw Glass Company, respondent. With him on the brief were *Sidney B. Gambill* and *Joseph D. Block.*

. *Samuel H. Levy* argued the cause for William Goldman Theatres, Inc., respondent. With him on the brief was *Bernard Wolfman.*

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court.

This litigation involves two cases with independent factual backgrounds yet presenting the identical issue. The two cases were consolidated for argument before the Court of Appeals for the Third Circuit and were heard *en banc.* The common question is whether money received as exemplary damages for fraud or as the punitive two-thirds portion of a treble-damage antitrust recovery must be reported by a taxpayer as gross income under § 22 (a) of the Internal Revenue Code of 1939.[1] In a single opinion, 211 F. 2d 928, the Court of Appeals affirmed the Tax Court's separate rulings in favor of the taxpayers. 18 T. C. 860; 19 T. C. 637. Because of the frequent recurrence of the question and differing interpretations by the lower courts of this Court's decisions bearing upon the problem, we granted the Commissioner of Internal Revenue's ensuing petition for certiorari. 348 U. S. 813.

The facts of the cases were largely stipulated and are not in dispute. So far as pertinent they are as follows:

*Commissioner* v. *Glenshaw Glass Co.*—The Glenshaw Glass Company, a Pennsylvania corporation, manufactures glass bottles and containers. It was engaged in protracted litigation with the Hartford-Empire Company, which manufactures machinery of a character used by Glenshaw. Among the claims advanced by Glenshaw

---

[1] 53 Stat. 9, 53 Stat. 574, 26 U. S. C. § 22 (a).

were demands for exemplary damages for fraud[2] and treble damages for injury to its business by reason of Hartford's violation of the federal antitrust laws.[3] In December, 1947, the parties concluded a settlement of all pending litigation, by which Hartford paid Glenshaw approximately $800,000. Through a method of allocation which was approved by the Tax Court, 18 T. C. 860, 870–872, and which is no longer in issue, it was ultimately determined that, of the total settlement, $324,529.94 represented payment of punitive damages for fraud and antitrust violations. Glenshaw did not report this portion of the settlement as income for the tax year involved. The Commissioner determined a deficiency claiming as taxable the entire sum less only deductible legal fees. As previously noted, the Tax Court and the Court of Appeals upheld the taxpayer.

*Commissioner* v. *William Goldman Theatres, Inc.*— William Goldman Theatres, Inc., a Delaware corporation operating motion picture houses in Pennsylvania, sued Loew's, Inc., alleging a violation of the federal antitrust laws and seeking treble damages. After a holding that a violation had occurred, *William Goldman Theatres, Inc.* v. *Loew's, Inc.*, 150 F. 2d 738, the case was remanded to the trial court for a determination of damages. It was found that Goldman had suffered a loss of profits equal to $125,000 and was entitled to treble damages in the sum of $375,000. *William Goldman Theatres, Inc.* v. *Loew's, Inc.*, 69 F. Supp. 103, aff'd, 164 F. 2d 1021, cert. denied, 334 U. S. 811. Goldman reported only $125,000 of the recovery as gross income and claimed that the $250,000

---

[2] For the bases of Glenshaw's claim for damages from fraud, see *Shawkee Manufacturing Co.* v. *Hartford-Empire Co.*, 322 U. S. 271; *Hazel-Atlas Glass Co.* v. *Hartford-Empire Co.*, 322 U. S. 238.

[3] See *Hartford-Empire Co.* v. *United States*, 323 U. S. 386, 324 U. S. 570.

balance constituted punitive damages and as such was not taxable. The Tax Court agreed, 19 T. C. 637, and the Court of Appeals, hearing this with the *Glenshaw* case, affirmed. 211 F. 2d 928.

It is conceded by the respondents that there is no constitutional barrier to the imposition of a tax on punitive damages. Our question is one of statutory construction: are these payments comprehended by § 22 (a)?

The sweeping scope of the controverted statute is readily apparent:

> "SEC. 22. GROSS INCOME.
>
> "(a) GENERAL DEFINITION.—'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service . . . of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, *or gains or profits and income derived from any source whatever. . . .*"
> (Emphasis added.) [4]

This Court has frequently stated that this language was used by Congress to exert in this field "the full measure of its taxing power." *Helvering* v. *Clifford,* 309 U. S. 331, 334; *Helvering* v. *Midland Mutual Life Ins. Co.,* 300 U. S. 216, 223; *Douglas* v. *Willcuts,* 296 U. S. 1, 9; *Irwin* v. *Gavit,* 268 U. S. 161, 166. Respondents contend that punitive damages, characterized as "windfalls" flowing from the culpable conduct of third parties, are not within the scope of the section. But Congress applied no limitations as to the source of taxable receipts, nor restrictive

---

[4] See note 1, *supra.*

labels as to their nature. And the Court has given a liberal construction to this broad phraseology in recognition of the intention of Congress to tax all gains except those specifically exempted. *Commissioner* v. *Jacobson,* 336 U. S. 28, 49; *Helvering* v. *Stockholms Enskilda Bank,* 293 U. S. 84, 87–91. Thus, the fortuitous gain accruing to a lessor by reason of the forfeiture of a lessee's improvements on the rented property was taxed in *Helvering* v. *Bruun,* 309 U. S. 461. Cf. *Robertson* v. *United States,* 343 U. S. 711; *Rutkin* v. *United States,* 343 U. S. 130; *United States* v. *Kirby Lumber Co.,* 284 U. S. 1. Such decisions demonstrate that we cannot but ascribe content to the catchall provision of § 22 (a), "gains or profits and income derived from any source whatever." The importance of that phrase has been too frequently recognized since its first appearance in the Revenue Act of 1913 [5] to say now that it adds nothing to the meaning of "gross income."

Nor can we accept respondents' contention that a narrower reading of § 22 (a) is required by the Court's characterization of income in *Eisner* v. *Macomber,* 252 U. S. 189, 207, as "the gain derived from capital, from labor, or from both combined." [6] The Court was there endeavoring to determine whether the distribution of a corporate stock dividend constituted a realized gain to the shareholder, or changed "only the form, not the essence," of

---

[5] 38 Stat. 114, 167.

[6] The phrase was derived from *Stratton's Independence, Ltd.* v. *Howbert,* 231 U. S. 399, 415, and *Doyle* v. *Mitchell Bros. Co.,* 247 U. S. 179, 185, two cases construing the Revenue Act of 1909, 36 Stat. 11, 112. Both taxpayers were "wasting asset" corporations, one being engaged in mining, the other in lumbering operations. The definition was applied by the Court to demonstrate a distinction between a return on capital and "a mere conversion of capital assets." *Doyle* v. *Mitchell Bros. Co., supra,* at 184. The question raised by the instant case is clearly distinguishable.

his capital investment. *Id.*, at 210. It was held that the taxpayer had "received nothing out of the company's assets for his separate use and benefit." *Id.*, at 211. The distribution, therefore, was held not a taxable event. In that context—distinguishing gain from capital—the definition served a useful purpose. But it was not meant to provide a touchstone to all future gross income questions. *Helvering* v. *Bruun, supra,* at 468–469; *United States* v. *Kirby Lumber Co., supra,* at 3.

Here we have instances of undeniable accessions to wealth, clearly realized, and over which the taxpayers have complete dominion. The mere fact that the payments were extracted from the wrongdoers as punishment for unlawful conduct cannot detract from their character as taxable income to the recipients. Respondents concede, as they must, that the recoveries are taxable to the extent that they compensate for damages actually incurred. It would be an anomaly that could not be justified in the absence of clear congressional intent to say that a recovery for actual damages is taxable but not the additional amount extracted as punishment for the same conduct which caused the injury. And we find no such evidence of intent to exempt these payments.

It is urged that re-enactment of § 22 (a) without change since the Board of Tax Appeals held punitive damages nontaxable in *Highland Farms Corp.,* 42 B. T. A. 1314, indicates congressional satisfaction with that holding. Re-enactment—particularly without the slightest affirmative indication that Congress ever had the *Highland Farms* decision before it—is an unreliable indicium at best. *Helvering* v. *Wilshire Oil Co.,* 308 U. S. 90, 100–101; *Koshland* v. *Helvering,* 298 U. S. 441, 447. Moreover, the Commissioner promptly published his nonacquiescence in this portion of the *Highland Farms* holding[7] and has,

---

[7] 1941–1 Cum. Bull. 16.

before and since, consistently maintained the position that these receipts are taxable.[8]   It therefore cannot be said with certitude that Congress intended to carve an exception out of § 22 (a)'s pervasive coverage.   Nor does the 1954 Code's [9] legislative history, with its reiteration of the proposition that statutory gross income is "all-inclusive," [10] give support to respondents' position.   The definition of gross income has been simplified, but no effect upon its present broad scope was intended.[11]   Certainly punitive damages cannot reasonably be classified as gifts, cf. *Commissioner* v. *Jacobson,* 336 U. S. 28, 47–52, nor do they come under any other exemption provision in the Code.   We would do violence to the plain meaning of the statute and restrict a clear legislative attempt to

---

[8] The long history of departmental rulings holding personal injury recoveries nontaxable on the theory that they roughly correspond to a return of capital cannot support exemption of punitive damages following injury to property.   See 2 Cum. Bull. 71; I–1 Cum. Bull. 92, 93; VII–2 Cum. Bull. 123; 1954–1 Cum. Bull. 179, 180. Damages for personal injury are by definition compensatory only. Punitive damages, on the other hand, cannot be considered a restoration of capital for taxation purposes.

[9] 68A Stat. 3 *et seq.*   Section 61 (a) of the Internal Revenue Code of 1954, 68A Stat. 17, is the successor to § 22 (a) of the 1939 Code.

[10] H. R. Rep. No. 1337, 83d Cong., 2d Sess. A18; S. Rep. No. 1622, 83d Cong., 2d Sess. 168.

[11] In discussing § 61 (a) of the 1954 Code, the House Report states:

"This section corresponds to section 22 (a) of the 1939 Code. While the language in existing section 22 (a) has been simplified, the all-inclusive nature of statutory gross income has not been affected thereby.   Section 61 (a) is as broad in scope as section 22 (a).

"Section 61 (a) provides that gross income includes 'all income from whatever source derived.'   This definition is based upon the 16th Amendment and the word 'income' is used in its constitutional sense."   H. R. Rep. No. 1337, *supra,* note 10, at A18.

A virtually identical statement appears in S. Rep. No. 1622, *supra,* note 10, at 168.

bring the taxing power to bear upon all receipts constitutionally taxable were we to say that the payments in question here are not gross income. See *Helvering* v. *Midland Mutual Life Ins. Co., supra,* at 223.

*Reversed.*

MR. JUSTICE DOUGLAS dissents.

MR. JUSTICE HARLAN took no part in the consideration or decision of this case.