William Basle v. Commissioner.
Basle v. Commissioner
Docket No. 57450.
United States Tax Court
T.C. Memo 1957-169; 1957 Tax Ct. Memo LEXIS 86; 16 T.C.M. (CCH) 745; T.C.M. (RIA) 57169; August 30, 1957
John Wiseman, C.P.A., 1219 Chapline Street, Wheeling, W. Va., for the petitioner. David L. Ketter, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies against the petitioner as follows: Defi-
Additions to Tax
Taxable Year
ciency in
under Section
Ended
Income Tax
294(d)(2)
December 31, 1950
$9,907.51
$1,460.71
December 31, 1951
288.03
December 31, 1952
738.41
These deficiencies result from respondent's determination that the net amount of $31,500 received by petitioner in 1950 in settlement of certain claims under the Anti-Trust Acts of the United States constituted ordinary income in its entirety, and that the sum of $20,000 paid by *87 petitioner to the widow of his deceased partner was in payment for the latter's one-half interest in the partnership and as such did not represent a depreciable asset, and therefore petitioner's amortization of this payment as "Additional Lease and Equipment Cost" was not allowed. In his amended petition, petitioner alleged error with regard to these determinations and also alleged that he had erroneously reported all of the profits from the business here involved in his own return, whereas one-half of the profits earned up to June 26, 1950, should have been credited to the estate of his deceased partner. Thus, the questions to be decided in this case are: (1) Whether the petitioner is entitled to divide the profits of Basle Amusement Company, earned between January 1, 1950, and June 26, 1950, between himself and the estate of Eugene G. Basle, his deceased partner; (2) whether the entire net proceeds from the settlement in 1950 of a claim based upon alleged violations of the anti-trust laws of the United States are taxable to the petitioner as ordinary income or a part thereof is taxable as capital gain; (3) whether the petitioner is entitled to amortize over either the remaining term *88 of the original partnership agreement or the remaining term of the lease, or can fully deduct in the taxable year 1950 any of the amount he obligated himself to pay for the value of the partnership interest held by Eugene's estate; and (4) whether the petitioner is liable for an addition to tax of $1,460.71 for the taxable year 1950 under section 294(d)(2) of the Internal Revenue Code of 1939 by reason of substantial underestimation of estimated taxes. Findings of Fact Some of the facts have been stipulated by the parties and are incorporated herein by this reference. The petitioner is an individual trading as Basle Amusement Company in Washington, Pennsylvania. The returns for the years here involved were filed with the collector and/or the district director of internal revenue at Pittsburgh, Pennsylvania. On August 26, 1939, the petitioner and his brother Eugene Basle, hereinafter referred to as Eugene, entered into a written partnership agreement for the purpose of carrying on the business of operating motion picture theaters under the firm name of "Basle Amusement Company." This agreement was to last for a period of 15 years, and under its provisions Eugene was given exclusive *89 control and management of the business. Sections 16 and 17 of this agreement read as follows: "16. If either party shall elect to retire from the partnership before the end of the term fixed for its termination, then and in such event such party shall give to the other party written notice of such election not less than sixty (60), nor more than ninety (90), days, prior to the time at which he proposes to retire from the partnership, and the continuing partner shall pay to the retiring partner, for the latter's interest in said partnership, a sum equal to one-half of the net value of said partnership. If such net value cannot be agreed upon between the parties, then each party shall select an arbitrator, the two arbitrators shall select an umpire, and the valuation fixed by the majority of the three so selected as to the net value of the retiring partner's interest in said partnership shall be paid by the continuing partner to the retiring partner. Such payments shall be made according to the terms agreed upon by the parties hereto, or if no agreement can be effected, then payment shall be in cash upon delivery of the necessary instruments and assurances of title. "17. The death *90 of either party shall not terminate the partnership, nor the business conducted by it, but the same shall continue for the then remaining unexpired term, and the personal representative of the deceased partner shall be entitled to receive, in full satisfaction and discharge of the deceased's party's interest in the partnership, such an amount as is determined to be the value thereof, the same to be determined in the manner hereinabove fixed in the event one of the parties shall retire from said partnership, the personal representative of the deceased partner standing in place of the retiring partner." The partners leased from Maria Basle a theater known as the Basle Theatre in Washington, Pennsylvania, for a period of 10 years. This lease contained a provision for two additional optional periods of 5 years each, one of which was exercised in 1949. The petitioner and his partner Eugene on January 2, 1946, entered into an agreement amending and modifying the partnership agreement of August 26, 1939, "to the end that said agreement be suspended during the period of" the agreement of January 2, 1946. This January 2 agreement was not acknowledged until December 28, 1946. It was to last *91 for a period of 12 years. The agreement provided that the petitioner was to pay Eugene Basle $100 a week, such payments to begin on the first Sunday in June 1947. During the period covered by this agreement, Eugene was not to be held personally liable for any of the debts and transactions of the business. Also, according to the agreement, the petitioner was to have full control of the management and operation of the partnership business, including the right to receive Eugene's share of the profits and to use his interest in the lease between the partnership and Maria Basle. No provision was made in this agreement with reference to the death of either party or to the dissolution or termination of the "suspended" partnership. Under date of December 31, 1946, the petitioner signed the following unaddressed letter: "In return for your leasing me your share of the Basle Amusement Company I am willing to make the following agreements. "1. I will guarantee you Fifty-two hundred dollars a year for twelve years. "2. Any profits arising from the Basle Theatre over sixteen thousand, six hundred dollars a year will be divided between you and myself equally. "3. This agreement will begin *92 in the first Sunday in June, 1947. "4. The five thousand, two hundred dollars will be paid at the rate of one hundred dollars a week. "5. Any additional profits will be divided at the end of the year, in the year that they occur. "6. [No words follow this numeral.] "[Signed] William Basle William Basle" The signature "Gene Basle" appears on the side of this letter. However, no payments were ever made under this agreement, although profits did exceed $16,600 in 1948, and no "lease" of his "share of the Basle Amusement Company" was executed by Eugene after the date of that letter. The petitioner, on behalf of the Basle Amusement Company, made a claim in 1948 against certain film companies for the recovery of damages based upon alleged violations of the antitrust laws of the United States, specifically for the withholding of first-run movies from the use of the partnership. With regard to this claim petitioner contended that the bulk of the damages was sustained during the period 1941 to 1945, inclusive, and resulted from a drop in attendance. The petitioner filed no action in any court in connection with this claim, and a settlement was later reached. Eugene died on *93 January 28, 1949, and letters of administration were issued in his estate to Margaret Jackson Basle. After his death a dispute arose between the petitioner and Margaret, the administratrix of Eugene's estate, concerning the interpretation of the January 2, 1946, agreement. The administratrix contended that petitioner's obligation to pay $100 a week continued to the end of the 12-year period specified in the agreement, while petitioner's position was that it ended with Eugene's death. The petitioner did not make any payments under the provisions of the January 2, 1946, agreement to the estate of Eugene Basle after his death. On June 16, 1949, an inventory and appraisement of the estate of Eugene was filed, in which was listed a claim against the petitioner "under Article of Agreement dated January 2, 1946," in the amount of $25,000. On June 26, 1950, the Orphans' Court of Washington County, Pennsylvania, approved a compromise arrangement between the petitioner and the administratrix of the estate. Prior to that date the petitioner, through his attorney, had negotiated a tentative settlement of the claims against the film companies for a gross amount of $45,000. This was not known *94 by the administratrix nor by her attorney. Under the provisions of this compromise, the administratrix, in consideration of $20,000, sold and assigned to petitioner all of the deceased partner's interest in the partnership including his share of assets and any and all rights and causes of action, and also agreed that payment of said consideration was in full and complete satisfaction of any and all claims under the January 2, 1946, agreement and the original partnership agreement of August 26, 1939. Petitioner assumed all the debts and obligations of the partnership. A separate instrument, dated June 26, 1950, was entered into between the administratrix and the petitioner by which the administratrix assigned to the petitioner all rights which Eugene, as a partner, had in any causes of action including those under the anti-trust laws of the United States. This particular assignment was required by the various motion picture companies which, according to the petitioner's contention, had violated the Federal anti-trust laws, before they would enter into any final settlement agreements with the petitioner. In making the settlement with Eugene's administratrix, petitioner was more interested *95 in obtaining this assignment and in clearing his title to the partnership assets than in settling the claim of the administratrix under the January 2, 1946, agreement, the validity of which claim was doubted by the attorney for the administratrix. On July 5, 1950, the petitioner entered into settlement agreements with Columbia Pictures Corporation, Paramount Film Distributing Corporation, Loew's Incorporated, RKO Radio Pictures, Inc., Twentieth Century-Fox Film Corporation, Warner Bros. Pictures, Inc., Warner Bros. Pictures Distributing Corporation, Warner Bros. Theatres, Inc., and Warner Bros. Circuit Management Corporation, under which agreements the petitioner obtained a total settlement of his claims of $45,000. Counsel fees amounted to $13,500 in connection with the settlement, and the petitioner therefore received a net balance of $31,500. Each of the agreements contained an allocation of the $45,000, whereby $11,250 was stated to be on account of loss of profits, and $33,750 on account of damage to goodwill of the business. The negotiations preceding the settlement were conducted for the most part over the telephone, although some of the work was done through correspondence. *96 During the negotiations no proof of any damages on account of loss of profits or loss of goodwill was made. The allocations contained in those agreements of the different amounts for loss of profits and for damage to goodwill were made at the request of petitioner's counsel, and the petitioner would not agree to settlement on any other basis. The petitioner estimated on his declaration of estimated tax for the taxable year 1950 that his income taxes for the calendar year 1950 would be $1,000. The petitioner reported, on his income tax return for the year 1950, taxes for that year of $15,437.58. With regard to the receipts from the motion picture companies, he reported as ordinary income the amount of $7,875, as representing a recovery of profits, and as long-term capital gain the amount of $23,625, as representing recovery of damages to goodwill. The petitioner filed a claim on March 12, 1954, for a refund of income taxes for the taxable year 1950. The basis for this claimed refund was that two-thirds of the amount of the settlement with the motion picture companies was in reality a payment for damages, and that an amount equivalent to a net of about $20,000 should not have been *97 included in taxable income of any kind for 1950. In each of the taxable years the petitioner took a depreciation deduction for "Additional Lease and Equipment Cost" based on the entire settlement amount of $20,000 paid to the estate of Eugene Basle, to be amortized over the 110 months of the remaining maximum terms of the lease. At all times material hereto, the petitioner maintained his books and accounts and filed his Federal income tax return on the cash basis, and his taxable year was the calendar year. The partnership of the petitioner and Eugene, up to and including the taxable year ended December 31, 1949, kept its books and accounts and filed its information returns of income on an accrual basis, and it accounted for and reported its income on the calendar year basis. The books and accounts covering the operation of the Basle Theatre under the name of Basle Amusement Company were kept on an accrual basis for the calendar year 1950. No partnership return was filed for the calendar year 1950. For the 26-week period beginning January 1, 1950, and ending July 1, 1950, the books of the Basle Amusement Company reflected earnings of $13,672.67. This amount is exclusive of any *98 part of the proceeds from the anti-trust settlement. The books of the Basle Amusement Company show that the capital account of Eugene as of January 1, 1950, had a debit balance of $3,984.35, and that the petitioner's capital account at the same date showed a credit balance of $2,153.70. The partnership return of income for the taxable year 1949 reflects a credit balance of $3,345 in Eugene's capital account as of December 31, 1949, and a debit balance of $5,175.65 in the petitioner's capital account as of that same date. At July 1, 1950, the books of the Basle Amusement Company reflect total assets of $37,870.29, including $16,370.73 for theater equipment. Opinion KERN, Judge: The issues in this case are: (1) Whether a partnership existed at any time during the taxable year 1950 between the petitioner and the estate of his deceased partner, with the result that the earnings of the business up to June 26, 1950, would be equally divisible between the petitioner and the estate; (2) whether and to what extent the proceeds of the antitrust claim received in 1950 are taxable to the petitioner as capital gain or ordinary income; (3) whether the petitioner is entitled to amortize or fully *99 deduct any of the amount he obligated himself to pay to the estate of Eugene under the settlement of June 26, 1950; and (4) whether the petitioner is liable for an addition to tax of $1,460.71 for the taxable year 1950 under section 294(d) (2) of the Internal Revenue Code of 1939 by reason of a substantial underestimation of estimated tax. In considering the troublesome problem having to do with the status of the partnership here involved, it may be helpful to set out a resume of some of the pertinent facts. The confusion attending this problem is compounded by the several agreements relating to the partnership and the shifting and sometimes conflicting position of the parties. This confusion has not been completely cleared up by the pleadings, record, and briefs. The original partnership agreement was executed on August 26, 1939. Paragraph 17 of this agreement provided as follows: "The death of either party shall not terminate the partnership, nor the business conducted by it, but the same shall continue for the then remaining unexpired term, and the personal representative of the deceased partner shall be entitled to receive, in full satisfaction and discharge of the deceased's *100 party's interest in the partnership, such an amount as is determined to be the value thereof, the same to be determined in the manner hereinabove fixed in the event one of the parties shall retire from said partnership, the personal representative of the deceased partner standing in place of the retiring partner." This agreement was "suspended" during the period of another agreement, dated January 2, 1946, wherein the partners modified the terms of the original partnership so that Eugene was to receive $100 weekly for 12 years in exchange for his assigning the management of the partnership business to petitioner for a like period, together with his interest in the lease and the right to all profits from the business. On December 31, 1946, the parties signed a memorandum which purported to embody, in addition to the basic terms set out by the January 2, 1946, agreement, a provision that "Any profits arising from the Basle Theatre over sixteen thousand, six hundred dollars a year will be divided between you and myself [taxpayer] equally." This latter memorandum does not appear to have been acted upon or operative. The weekly payments provided for under the January 2, 1946, agreement *101 began in June 1947 and ceased when Eugene died on January 28, 1949. A dispute then arose between Eugene's personal representative and the petitioner as to the effect of the January 2, 1946, agreement after his death, and a claim was included in the inventory of Eugene's estate for $25,000 on the basis of the agreement of January 2, 1946. About this time petitioner's counsel in the anti-trust claims began negotiations looking toward their settlement without suit, and the probability developed that they would be settled for a substantial sum, a development not known to the administratrix. Therefore, petitioner was anxious to obtain an assignment of Eugene's interest in these claims. The deceased partner's personal representative filed in the May 1950 term of the Orphans' Court of Washington County, Pennsylvania, a petition for leave to compromise the claim listed in the inventory of the estate. The compromise was approved by the Court and an agreement was thereafter executed by the parties on June 26, 1950. This compromise agreement read in part as follows: "WHEREAS, the partnership, as aforesaid, was dissolved by the death of the said Eugene G. Basle, and the said William Basle thereby *102 became the surviving and liquidating partner of said co-partnership; and "WHEREAS, the said William Basle has signified his desire to purchase the share of the said deceased partner in the partnership effects, and a valuation thereof has been made and agreed upon between the said Administratrix and the said surviving partner, such value being in the sum of Twenty Thousand and no/100ths ($20,000.00) Dollars, for the interest of the estate in said partnership effects; * * *" Also, the recital of consideration in the compromise agreement stated that: "Payment of the aforesaid sum of $20,000.00 shall be in full and complete satisfaction of any and all claims which have accrued or may accrue, by reason of the terms of the aforementioned agreement of January 2, 1946, and an agreement dated August 26, 1939." Not only was a general assignment of rights and causes of action by the administratrix included in the compromise agreement, but there was also executed by her simultaneously an assignment to petitioner which specifically covered "all claims, actions and causes of action under the Antitrust laws of the United States." The taxpayer now claims that the original partnership was *103 still in being up to June 26, 1950, and that, accordingly, the earnings of the business in the taxable year up to that date were divisible between himself and the estate holding Eugene's interest. This position assumes, and so the petitioner argues, that the January 2, 1946, agreement was personal in nature and therefore lapsed when Eugene died. The Commissioner argues that the original partnership was terminated as of the date of the January 2, 1946, modification, and, further, that the January 2, 1946, agreement ended with Eugene's death or, at the latest, June 26, 1950, when the compromise was made. We conclude from the entire record that the original partnership, although modified substantially, was in existence at the time of Eugene's death, that it was dissolved by his death, and that thereafter petitioner was merely the liquidator of a dissolved partnership. The various actions and inactions of petitioner and Eugene's administratrix indicate their intention not to continue the partnership, but to treat the partnership dissolved and the value, if any, of Eugene's rights in connection therewith fixed as of the time of his death. We particularly point out the recitations in the *104 compromise agreement of June 26, 1950, the failure of the petitioner to pay and the administratrix to claim any distribution of earnings from the business after Eugene's death, and petitioner's failure to file any partnership return for 1950. Since we have concluded that no partnership existed during the taxable year, the petitioner is not entitled to attribute onehalf of the earnings of the business during the taxable year 1950 to the estate of his deceased partner. The taxpayer also argues that one-half of the net proceeds from the settlement in 1950 of an anti-trust claim against several film companies is attributable to Eugene's estate as having accrued to the partnership earlier in 1950 and prior to the June 26, 1950, agreement. This contention must also fail for the same reason. The petitioner next claims that threefourths of the net proceeds of this antitrust claim settlement represents a long-term capital gain attributable to the loss of partnership goodwill, and points to the agreement which specifically allocates threefourths of the amount to the loss of goodwill and the other one-fourth to the loss of profits. However, *105 the Commissioner is not bound by the allocation contained in the agreement between the parties. Commissioner v. Court Holding Co., 324 U.S. 331; Particelli v. Commissioner, 212 Fed. (2d) 498; Hamlin's Trust v. Commissioner, 209 Fed. (2d) 761. The taxpayer reported the three-fourths of the net proceeds as long-term capital gain on his 1950 income tax return. However, in 1954 he filed a claim for a refund for a portion of his 1950 taxes on the basis that two-thirds of the net amount of the settlement, or $20,000, was, in reality, a payment for damages, and in view of the Glenshaw Glass Co. case, 18 T.C. 860, affd. (C.A. 3) 211 Fed. (2d) 928, should not have been included in his taxable income for 1950. Subsequent to his claim for a refund, this case was reversed by the Supreme Court in Commissioner v. Glenshaw Glass Co., 348 U.S. 426, wherein the Court held that punitive or exemplary damages awarded under the anti-trust laws are taxable as income. The Commissioner's position is that there has been no proof either *106 here or in the negotiations leading to the settlement of the claims as to the damages for loss of goodwill, to which a portion of the settlement was allocated, that the entire amount represented recovery of lost profits, and that, therefore, it is taxable as ordinary income under section 22(a) of the 1939 Code. The record merely shows that the petitioner requested the film companies to allocate three-fourths of the total amount of the settlement to the loss of goodwill and one-fourth to loss by damage. Otherwise, nothing in the record indicates either a loss of goodwill or the basis of any goodwill. We conclude that the respondent did not err in his determination that the net proceeds of the settlement, dated July 5, 1950, are taxable as ordinary income to the taxpayer. The next issue is whether the petitioner is entitled to an amortization deduction in each of the taxable years for "Additional Lease and Equipment Cost" of any or all of the amount paid by petitioner pursuant to the settlement agreement of June 26, 1950. The Commissioner disallowed the deduction on the ground that the settlement represented payment for Eugene's one-half interest in the partnership and "as such the *107 payment does not represent a depreciable asset." In an amended petition the taxpayer claims that the amount which he is entitled to amortize should include an additional $3,984.35 which represented the debit balance in Eugene's capital account that was canceled by the settlement, and, therefore, the amount to be amortized is $23,984.35. Also, in the amended petition, the taxpayer claims that amortization of the total amount should be allowed for the period of 4 years and 2 months, which was the duration of the remaining unexpired term of the original partnership agreement, instead of the 110 remaining months of the maximum term of the lease. The respondent urges that "the $23,984.35 figure represented an amount agreed upon to compromise the Estate's claim under the January 2, 1946 agreement and at the same time, an amount arrived at for petitioner to acquire the Estate's interest in the partnership"; that it is impossible to make any allocation of the amount between these two items; that even if it were possible to allocate an amount representing petitioner's consideration for the estate's share of the specific partnership property (petitioner already held the decedent's interest *108 in the lease pursuant to the agreement of January 2, 1946), it would be necessary to make a further allocation of this consideration to the specific property or assets acquired, citing Nathan Blum, 5 T.C. 702, and such further allocation would be impossible; and, therefore, petitioner may not deduct, by depreciation, amortization, or otherwise, any part of the consideration paid by him to Eugene's administratrix. We recognize the difficulties incident to the allocations here called for. To some extent they are due to the cross-purposes motivating the parties to the settlement agreement of June 26, 1950. Petitioner considered that his obligations under the agreement of January 2, 1946, ended with Eugene's death, and yet he claimed the complete personal interest in the lease as vested in him pursuant to this agreement. The administratrix appears to have retained her belief in the validity of her claim under this agreement, although it was doubted by her attorney. The sketchy book figures shown by the record indicate that the net worth of the partnership assets was negligible, yet the partnership returns for 1947, 1948, and 1949 showed net income of $22,535, $8,708, and *109 $15,117, respectively. Petitioner was particularly anxious to obtain the complete interest in the claims asserted against the film companies under the anti-trust laws since he knew the probability of their settlement for a considerable sum. The administratrix did not know this probability and at the time the settlement of June 26, 1950, was negotiated her attorney did not know of their existence. While any allocation under the circumstances is difficult, we consider that it should be made if at all possible, even with regrettable inexactness, in order to achieve approximate justice. See Cohan v. Commissioner, 39 Fed. (2d) 540. Upon the entire record we have concluded that of the $23,984.35 obligated for payment by petitioner under the settlement agreement of June 26, 1950, $10,000 was expended by him for Eugene's interest in the anti-trust claims against the film companies, $5,000 was in settlement of the claim of the administratrix under the agreement of January 2, 1946, and the balance was in payment for Eugene's interest in the assets of the former partnership. As to these *110 latter assets there is no evidence by which a further allocation may be made. It follows from these conclusions that petitioner had a basis of $10,000 with regard to the choses in action represented by the claims against the film companies; that he had a deductible business expense of $5,000 representing the amounts expended by him in settlement of the claim of the administratrix under the agreement of January 2, 1946, see Kornhauser v. United States, 276 U.S. 145; and that no amortization deduction is allowable to petitioner on account of the balance of the payment obligated by petitioner under the settlement agreement of June 26, 1950. The petitioner introduced no evidence which related directly to the propriety of respondent's determination of the addition to the 1950 tax for substantial underestimation of estimated tax under section 294(d)(2). The amount of such addition, if any, will depend upon the recomputation of tax to be made hereunder. Decision will be entered under Rule 50.