RICHARD L. POTTS and ELLEN W. POTTS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Potts v. Commissioner
Docket No. 9718-81.
United States Tax Court
T.C. Memo 1983-211; 1983 Tax Ct. Memo LEXIS 573; 45 T.C.M. (CCH) 1350; T.C.M. (RIA) 83211; April 19, 1983. Richard L. Potts, pro se. James W. Clark, for the respondent FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency in petitioners' Federal income tax for 1978 in the amount of $779. The issue to be decided is whether petitioners received taxable income in the amount of $3,210, or in any amount, from 530 E. 22nd Street Corp. in 1978. At the time the petition was filed, petitioners Richard L. Potts (Richard) and Ellen W. Potts (Ellen), husband and wife, resided in Orlando, Florida. They filed their Federal income tax return for 1978 with the Internal Revenue Service Center, Chamblee, Georgia. Petitioners' 1978 income tax return and its attachments show that Richard earned compensation of $8,091.36 from Seaburn and Robertson, Inc. Ellen earned compensation *574 of $9,407.36 from Ringling Bros. Barnum & Bailey, Circus World, Inc., and $190 from Rosie O'Gradys of Orlando, Inc. The return indicates that Richard worked as a hydrogeologist and Ellen worked as a dancer. In the notice of deficiency, respondent determined that petitioners had unreported income in the amount of $3,210. This determination was based on a Form W-2 filed by a corporation, 530 E. 22nd Street Corp., c/o James Sharenow, 1 Georgia Avenue, Bronxville, New York (the corporation).
Although the testimony is confused, it shows that the corporation in 1978 owned an apartment complex in a "very bad neighborhood" in New York City. Ellen's grandfather owned a fractional interest in the corporation and his stock in the corporation was inherited by Benjamin Wolkind, Ellen's father, and Murray Wolkind, her uncle. The corporation's apartment complex in 1978 was managed by James Sharenow (Sharenow), an attorney. From January through October 1978, Ellen received a check each month from Sharenow, acting on behalf of the corporation, in the total amount of $3,015.80, which she deposited in her bank account. Ellen sent two checks each month (or approximately) to her father, one *575 payable to him in the amount of $159 and the other payable to her uncle, Murray Wolkind, in the amount of $79. The total amount of the checks so transmitted to her father was $2,380. She thus retained $635.80 of the amount sent to her. Petitioners' explanation is that the checks Ellen received represented dividends from the corporation to which her father and uncle were entitled. Pursuant to an agreement with her father, she divided parts of the amounts transmitted to her between her father and her uncle and she retained the difference ($635.80). This computation of the retained amount does not include $194.20 shown on the Form W-2 to have been withheld by the corporation as F.I.C.A. taxes. There is no evidence Ellen even received that amount and petitioners' joint income tax return for 1978 and the accompanying Forms W-2 do not indicate that they claimed a credit against their tax liability for the excessive withheld F.I.C.A. taxes. The record contains no intelligible explanation of why Ellen received these amounts from the corporation. Quite clearly, while living and working in Florida in 1978, she did not earn them as an employee of the corporation when its only business *576 was operating an apartment house complex in a low income neighborhood in New York City. That she retained only $635.80 of the amounts sent to her is shown by documentary evidence. At one point in the trial, Ellen's father testified that Ellen was attending school and needed money, but at another point he stated that he did not "know to this day" why the money was sent to her. With his 1978 income tax return before him, he testified, without cross-examination on the point, that he reported the $159 per month he received as his income. Ellen testified, contrary to her father's statement, that she believed that she had graduated from school in 1978. At one point, she testified the money was a gift because she and her husband "were not doing well." At another point, however, she testified that she was "labeled, I believe, executor" and "under that title would get the funds and I would disburse the funds." Respondent suggests that the arrangement whereby the corporation disbursed the money to Ellen was a scheme to avoid New York State income taxes. We need not characterize the sum of $635.80 except to find that it did not represent a gift and that it did represent taxable income *577 under section 61, Internal Revenue Code of 1954. E.g., Commissioner v. Glenshaw Glass Co.,348 U.S. 426 (1955). To reflect the foregoing, Decision will be entered under Rule 155.