ALI R. DARVISHIAN AND KATHLEEN DARVISHIAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Darvishian v. Commissioner
Docket No. 4995-88.
United States Tax Court
T.C. Memo 1989-197; 1989 Tax Ct. Memo LEXIS 197; 57 T.C.M. (CCH) 259; T.C.M. (RIA) 89197; April 27, 1989
Ali R. Darvishian, pro se. Ruud Duval, for the respondent. PANUTHOS
MEMORANDUM FINDINGS OF FACT AND OPINION PANUTHOS, Special Trial Judge: Respondent determined deficiencies and additions to tax in petitioners' Federal income taxes as follows: Additions to Tax
Sec.
Sec.
Sec.
Sec.
6651(a)(1),
6653(a)(1),
6653(a)(2),
6661,
Year
Deficiency
I.R.C. 1954
I.R.C. 1954
I.R.C. 1954
I.R.C. 1954
1981
$ 4,273
-0-
$ 213.65
50% of interest
-0-
due on $ 4,273
1982
$ 6,043
-0-
$ 302.15
50% of interest
$ 1,510.75
due on $ 6,043
1983
$ 2,156
-0-
$ 107.80
50% of interest
-0-
due on $ 2,156
1984
$ 2,119
$ 32.40
$ 208.55
50% of interest
-0-
due on $ 2,119
The *199 issues for decision are: (1) Whether the interest income earned from certificates of deposit held in petitioner's name is includable in petitioners' income; and (2) whether petitioners are liable for additions to tax under sections 6651(a)(1), 6653(a), and 6661. [1]
FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and related exhibits are incorporated herein by this reference. Petitioners are husband and wife. They filed joint Federal income tax returns for the taxable years 1981, 1982, 1983, and 1984. At the time of filing the petition herein, petitioners resided at Bamberg, West Germany. Early in 1980, Hassan Abrishemian (Abrishemian), petitioner Ali R. Darvishian's uncle, came to the United States from Iran on a tourist visa for the purpose of setting up a business. Soon thereafter, he deposited $ 130,000 in an account in his name at the Capital Bank in Baton Rouge, Louisiana. On March 24, 1980, Abrishemian withdrew all the funds from Capital Bank and deposited the money in an account in his name at the Citizens *200 Trust Bank in Portsmouth, Virginia. The following day Abrishemian executed a power of attorney naming petitioner Ali R. Darvishian (hereinafter referred to as petitioner) as his agent for the purpose of organizing and operating a business for him. Abrishemian also gave petitioner $ 20,000 cash for the same purpose. In April or May 1980, Abrishemian returned to Iran. In November 1980, pursuant to his instructions, Abrishemian's wife contacted petitioner and requested that petitioner withdraw all the money from the Citizens Trust Bank and deposit the money in an account under petitioner's name. The reasons for these requested actions were that Abrishemian was incarcerated in Iran and concerned about the validity of the power of attorney should he be killed. Furthermore Abrishemian was under investigation by Iranian secret police at that time. Pursuant to the instructions, petitioner deposited the money in the Virginia National Bank under his own name, but with Abrishemian's tax identification number. Petitioner continued to look for investment opportunities for Abrishemian. On December 5, 1980, petitioner, along with Parviz Ghadit, purchased Arni's Restaurant in Rockville, *201 Maryland, from Leela Pastry, Inc. (hereinafter Leela Pastry). The restaurant was purchased in petitioner's and Ghadit's names as joint owners. The purchase price was $ 154,000. Petitioner made a $ 50,000 down payment, which was paid out of the account at the Virginia National Bank. The restaurant continually lost money. However, petitioner did not report the losses on his Federal income tax returns in 1980 or 1981 because he considered the restaurant to be Abrishemian's business. In an attempt to prevent the restaurant from failing, petitioner withdrew additional funds from the Virginia National Bank account and applied the funds to the restaurant business. Ultimately Abrishemian instructed petitioner to sell the restaurant. Petitioner entered into a termination agreement in March of 1981 with Leela Pastry by which: (1) Ownership of the restaurant reverted to Leela Pastry; (2) $ 25,000 of the down payment was forfeited; and (3) the remaining $ 25,000 was put into an escrow account to pay applicable expenses. None of the $ 50,000 down payment was returned to petitioner. Petitioner made no other business investments. From this time until November 18, 1983, petitioner transferred *202 the money between three different banks to obtain the highest rate of interest. These accounts were in petitioner's name. On November 18, 1983, pursuant to Abrishemian's instructions, petitioner deposited the money in the Dominion Savings and Loan in Norfolk, Virginia, in their joint names. In September 1984, Abrishemian returned to the United States, and on September 7, 1984, petitioner returned all the money to Abrishemian, including all interest earned from 1980 through 1984. On their returns, petitioners did not include any of the interest earned from the mentioned accounts for 1981, 1982, 1983 and 1984. The deficiencies arise from respondent's determination that petitioner failed to report interest income earned from certificates of deposit that were established by petitioner with money received from Abrishemian. OPINION Section 61 provides, in part, that "gross income means all income from whatever source derived." Interest is includable in a taxpayer's gross income. Sec. 61(a)(4). The Supreme Court has defined income as "undeniable accessions to wealth, clearly realized, and over which the taxpayers have complete dominion." Commissioner v. Glenshaw Glass Co.,348 U.S. 426, 431 (1955). *203 Generally, income received by an agent within the scope of the agency is included in the principal's income for the year it was received by the agent even though not received by the principal. Maryland Casualty Co. v. United States,251 U.S. 342, 347 (1920); Fogarty v. United States,780 F.2d 1005, 1008 (Fed. Cir. 1986); Joyce v. Commissioner,42 T.C. 628, 639 (1964); Producers Gin Association, A.A.L. v. Commissioner,33 T.C. 608, 613 (1959). Rev. Rul. 62-122, 1962-2 C.B. 12. Thus, if petitioner merely acted as an agent for his uncle, he should not be taxed on the interest earned by the certificates of deposit. We believe that the facts here present a close question. While we found petitioner to be a generally credible witness, we note that by placing the funds in an account in his name and social security number,petitioner created the appearance that the funds belonged to himself. By choosing the form of this arrangement, petitioner and his uncle prevented respondent otherwise withholding taxes on the interest earned by a nonresident alien. See secs. 871(a)(1)(A) and 1441(a) and (b). Thus, while *204 petitioner may have had a private arrangement with his uncle, third parties, including respondent, reasonably concluded that the funds belonged to petitioner. Petitioner was reasonably sophisticated in his movement of funds among different accounts and different banks in order to obtain favorable interest rates. Clearly, he must have been aware that there would be tax ramifications based on the interest earned in these accounts. In this regard, petitioner failed to present his uncle as a witness and failed to present any explanation as to what arrangement, if any, petitioner made with his uncle with respect to payment of taxes on the interest earned on the funds in question. Based on this record, we find that petitioner has failed to satisfy his burden of proof that the interest income should not be taxed to him in the years in question. With respect to the additions to tax, petitioner has failed to sustain his burden of proof that respondent's determination was not correct. Accordingly, respondent is sustained on the additions to tax. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩