T.C. Summary Opinion 2007-214


UNITED STATES TAX COURT



KEVIN AND DEBORAH KEITH, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 5757-05S.          Filed December 26, 2007.


Stephen G. Bresset, for petitioner.

Kristina L. Rico, for respondent.


CARLUZZO, Special Trial Judge:  This case was heard

pursuant to the provisions of section 7463.[1]  Pursuant to section

7463(b), the decision to be entered is not reviewable by any

_____

[1] Unless otherwise indicated, section references are to
the Internal Revenue Code of 1986, as amended, in effect for
the relevant period.  Rule references are to the Tax Court
Rules of Practice and Procedure.

other court, and this opinion shall not be cited as precedent for any other case.

Respondent determined a $12,448 deficiency in petitioners' 2002 Federal income tax and imposed a $2,490 section 6662(a) accuracy-related penalty. The issues for decision are: (1) Whether petitioners realized cancellation of indebtedness income as a result of a foreclosure proceeding involving their residence; and, if so (2) whether the underpayment of tax required to be shown on petitioners' 2002 Federal income tax return is a substantial understatement of income tax.

### Background

Some of the facts have been stipulated and are so found. Petitioners are married to each other. Their joint 2002 Federal income tax return was timely filed. At the time the petition was filed, they resided in Pennsylvania.

In 1994, petitioners purchased a parcel of land in Tobyhanna, Pennsylvania, for the purpose of constructing a house to be used as the family residence (the property). Petitioners financed the purchase of the land and/or the construction of the house through a $118,825 loan (the loan) from America's Wholesale Lender, now know as Countrywide Home Loans, Inc. (Countrywide). The loan was evidenced by a note and secured by a mortgage on the property, each dated September 2, 1994.

Petitioners apparently defaulted on their obligation to repay the loan according to the terms of the note. As a result, on December 13, 2000, foreclosure proceedings were initiated by Countrywide, and on August 29, 2002, the property was seized from petitioners pursuant to a writ of execution. On November 26, 2002, the property was sold for $80,500 to third-parties.

At the time the foreclosure proceeding was initiated, the principal balance on the loan was $112,035. In accordance with Pennsylvania procedures in such matters, for purposes of the foreclosure proceeding, the property was valued pursuant to a Broker's Price Opinion in a range from $90,000 to $100,000 depending upon the "marketing time".[2]

Countrywide's recovery on the note as a result of the foreclosure proceeding is not known. To the extent that it received less than petitioners owed, the company, although entitled to do so under Pennsylvania law, did not seek a deficiency judgment against petitioners. As Countrywide viewed the matter, following the foreclosure proceeding, petitioners owed the company $22,035, computed by subtracting the lower range of the Broker's Price Opinion, that is $90,000 from the amount of principal on the loan then outstanding, that is $112,035. Because Countrywide did not seek a deficiency judgment against

---

[2] The phrase "marketing time" as used in the valuation report is not familiar to the Court, and neither party offered an explanation as to what it means.

petitioners, the company was precluded under State law from collecting that amount. As evidenced in a Form 1099-C, Cancellation of Debt, issued to petitioners by Countrywide, $22,035 of the debt originating from the loan was forgiven during 2002.

Immediately preceding the foreclosure of the mortgage, petitioners had assets totaling $133,715 and liabilities totaling $155,505.59.[3]

Petitioners did not include any amount of cancellation of indebtedness income on their 2002 return. In the notice of deficiency respondent increased petitioners' income by the amount reported as cancellation of indebtedness on the Form 1099-C. Other adjustments made in the notice of deficiency have been agreed to by the parties.

## Discussion

In general, the term "income" as used in the Internal Revenue Code means income from any source, including income from the discharge of indebtedness. Sec. 61(a)(12); Commissioner v. Glenshaw Glass Co., 348 U.S. 426 (1955). In this case, during the year in issue, Countrywide forgave $22,035 of the debt owed to it by petitioners as a result of the loan. According to respondent, that amount is includable in petitioners' 2002

---

[3] The stipulated amount shown for assets includes the value of the residence at $90,000.

income.

Petitioners claim that they were insolvent at the time of the discharge, and, therefore, the amount of debt forgiven is excludable from their 2002 income. See sec. 108(a)(1)(B).

For purposes of section 108(a)(1)(B) the term "insolvent" means "the excess of liabilities over the fair market value of assets" as determined "immediately before the discharge." Sec. 108(d)(3). Respondent acknowledges that petitioners were insolvent to the extent of $21,790.59 immediately before the discharge. Nevertheless, relying upon an inapplicable regulation and precedent from a case superseded by the enactment of section 108(a)(1)(B),[4] respondent argues that "in order to qualify for the insolvency exception, the taxpayer must be insolvent both immediately before and immediately after the discharge of indebtedness." Respondent points out that petitioners have failed to establish that they were insolvent immediately following the discharge and argues that the provisions of section 108(a)(1)(B) do not apply. Petitioners' financial status immediately after the discharge, although disputed by the parties, is, simply put, not relevant.

Turning our attention to petitioners' financial status immediately before the discharge, and otherwise ignoring various

---

[4] Sec. 108 was amended by the Bankruptcy Tax Act of 1980, Pub. L. 96-589, sec. 2(a), 94 Stat. 3389.

of the parties' positions that we find to have no merit, we make the following findings regarding petitioners' financial status immediately before the discharge: (1) The fair market value of the property subject to the foreclosure proceeding was $90,000 (per stipulation of the parties); (2) petitioners had other assets totaling $43,715 (per stipulation of the parties); (3) petitioners' liability to Countrywide was not less than $143,280 (per stipulation of the parties); and (4) petitioners' other liabilities totaled not more than $12,224.79 (liabilities substantiated per stipulation of the parties). Plugging these amounts into the equation contemplated by the statute, we find, as respondent acknowledges in his brief, that immediately before the discharge, petitioners' liabilities exceeded their assets by $21,790.59, and therefore, within the meaning of section 108(a)(1)(B), petitioners were insolvent to that extent for purposes of section 108.

Section 108(a)(3) limits the exclusion provided in section 108(a)(1)(B) to the "amount by which the taxpayer is insolvent." Applying the $21,790.59 exclusion against the $22,035 discharged results in $244.41 that is includable in petitioners' 2002 income as a result of the discharge of their indebtedness to Countrywide.

Respondent imposed a section 6662(a) accuracy-related penalty upon the ground that the underpayment of tax required to

be shown on petitioners' 2002 return is a substantial understatement of income tax. Considering the foregoing, the understatement will be far less than the amount required for the imposition of the penalty. See sec. 6662(d). Respondent's imposition of the section 6662(a) accuracy-related penalty is rejected.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.