T.C. Summary Opinion 2010-149

UNITED STATES TAX COURT

GERALD W. CHIARITO, JR., AND DARLA K. CHIARITO, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12127-09S.          Filed October 6, 2010.

Gerald W. Chiarito, Jr. and Darla K. Chiarito, pro sese.

<u>Nicholas Doukas</u>, for respondent.

ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect when the petition was filed.[1]  Pursuant to section
7463(b), the decision to be entered is not reviewable by any

_____

    [1]  Unless otherwise indicated, all subsequent section
references are to the Internal Revenue Code in effect for the
year in issue, and all Rule references are to the Tax Court Rules
of Practice and Procedure.

other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency in petitioners' 2005 Federal income tax of $14,205 and an accuracy-related penalty of $2,841 under section 6662(a).

After a concession by respondent,[2] the sole issue for decision is whether petitioners are entitled to exclude from gross income a gain from the sale of a residence pursuant to section 121. We hold that petitioners are not entitled to such exclusion.

## Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts and accompanying exhibits.

Petitioners resided in the State of California when the petition was filed.

In January 2002, petitioners started a catering business called "Goodfellas Catering". Because the health department required all catering businesses to have an industrial kitchen, petitioners opened a lunch restaurant called "Goodfellas at The Galleria" in June 2002. During the years 2002, 2003, and 2004,

---

[2] Respondent concedes that petitioners are not liable for the accuracy-related penalty under sec. 6662(a).

Goodfellas at The Galleria reported net losses of approximately, $13,566, $29,572, and $21,121, respectively.

In August 2003, petitioners purchased a home on Ryan Avenue in Clovis, California (the Ryan home). Petitioners' basis in the home, including the purchase price and applicable closing costs, was $259,729.15. Petitioners lived in the Ryan home as their primary residence.

In February 2005, petitioners purchased a home on East Browning Avenue, also in Clovis, California (the Browning home), which home sits on a 5-acre lot. Petitioners purchased the Browning home with the intent to build a second residence on the property in which Mr. Chiarito's parents would live and which second residence would include an industrial kitchen for the catering business as required by the health department. The Browning home was purchased subject to Covenants, Conditions and Restrictions (CC&Rs), prohibiting the building of a second residence; however, petitioners were unaware of such CC&Rs at the time they purchased the home.

In April 2005, petitioners sold the Ryan home for $379,950.

In March 2006, the County of Fresno sent petitioners a letter regarding the process for filing an application to build a second residence on their property. In June 2006, the Fresno County Department of Public Works and Planning received six letters from petitioners' neighbors opposing the construction of

a second residence on petitioners' property.  Because of the CC&Rs and their neighbors' opposition, petitioners were never able to build the hoped-for second residence.

Petitioners timely filed their 2005 Federal income tax return, which return was prepared by a certified public accountant.  Petitioners excluded the gain from the sale of the Ryan home from their gross income pursuant to section 121.

In a notice of deficiency respondent disallowed the exclusion claimed by petitioners for gain on the sale of the Ryan home residence.

## Discussion[3]

Gross income means all income from whatever source derived, including a gain realized from the sale of property.  Sec. 61(a)(3); Commissioner v. Glenshaw Glass Co., 348 U.S. 426 (1955); secs. 1.61-1(a), 1.61-6(a), Income Tax Regs.  Section 121(a), however, allows a taxpayer to exclude from income gain on the sale or exchange of property if the taxpayer has owned and used such property as his principal residence for at least 2 of the 5 years immediately preceding the sale.

A taxpayer who fails to satisfy the ownership and use requirements under section 121(a) may still qualify for a prorated exclusion if "such sale or exchange is by reason of a

---

[3] We decide this case without regard to the burden of proof.

change in place of employment, health, or, to the extent provided in regulations, unforeseen circumstances." Sec. 121(c). In this regard, section 1.121-3(b), Income Tax Regs., states as follows:

> (b) Primary reason for sale or exchange.--* * * Factors that may be relevant in determining the taxpayer's primary reason for the sale or exchange include * * * the extent to which--
>
> > (1) The sale or exchange and the circumstances giving rise to the sale or exchange are proximate in time;
> >
> > (2) the suitability of the property as the taxpayer's principal residence materially changes;
> >
> > (3) the taxpayer's financial ability to maintain the property is materially impaired;
> >
> > (4) the taxpayer uses the property as the taxpayer's residence during the period of the taxpayer's ownership of the property;
> >
> > (5) the circumstances giving rise to the sale or exchange are not reasonably foreseeable when the taxpayer begins using the property as the taxpayer's principal residence; and
> >
> > (6) the circumstances giving rise to the sale or exchange occur during the period of the taxpayer's ownership and use of the property as the taxpayer's principal residence.

"A sale or exchange is by reason of unforeseen circumstances if the primary reason for the sale or exchange is the occurrence of an event that the taxpayer could not reasonably have anticipated before purchasing and occupying the residence." Sec. 1.121-3(e)(1), Income Tax Regs. A sale or exchange by reason of unforeseen circumstances does not qualify for the prorated exclusion if the primary reason for the sale or exchange is a

preference for a different residence.  Id.  Events that qualify as unforeseen circumstances include an involuntary conversion or casualty loss of the residence, death, unemployment and changes in employment, divorce or legal separation, or multiple births resulting from the same pregnancy.  Sec. 1.121-3(e)(2), Income Tax Regs.

Petitioners purchased the Ryan home in August 2003 and sold it in April 2005.  Although petitioners lived in the Ryan home as their primary residence, they did not reside in the home for at least 2 years before selling it.  Thus, petitioners do not qualify for the exclusion from income under section 121(a).

Petitioners may qualify for a prorated exclusion under section 121(c) if the sale of the Ryan home was by reason of a change in place of employment, health, or a result of unforeseen circumstances.

Before the sale of the Ryan home, neither petitioner had a change in place of employment or a change in health status. Petitioners contend that the sale of the Ryan home was a result of unforeseen circumstances, including the need for an industrial kitchen and therefore the purchase of the Browning home, the eventual inability to build a second residence on the Browning home property due to the CC&Rs, and the financial strain of the losses sustained by Goodfellas at The Galleria.  Respondent

contends that petitioners do not qualify for the prorated exclusion for unforeseen circumstances under section 121(c).

Although the circumstances in which petitioners found themselves were unfortunate, none rises to the level of an "unforeseen circumstance" within the meaning of section 121(c) or its implementing regulation, section 1.121-3(b), Income Tax Regs. Petitioners knew they had a need for an industrial kitchen as early as the spring of 2002, which was the reason they also started the lunch restaurant Goodfellas at The Galleria, over 1 year before the purchase of the Ryan home. See sec. 1.121-3(b)(5), (e)(1), Income Tax Regs. Petitioners were also well aware of the losses incurred by Goodfellas at The Galleria, as the restaurant had sustained losses in 2002, 2003, and 2004. See id.

In addition, petitioners only learned of their inability to build a second residence and therefore an industrial kitchen on the Browning home property at some point in 2006, well after they had sold the Ryan home.[4] See sec. 1.121-3(b)(6), Income Tax Regs. Furthermore, the sale of the Ryan home may be attributed to petitioners' preference for the Browning home, thereby precluding petitioners from excluding the gain from the sale of the residence from their gross income. See sec. 1.121-3(e)(1),

---

[4] Petitioners did not adequately explain why constructing the industrial kitchen in either the Ryan home or the existing Browning home was not an option.

Income Tax Regs. Finally, the sale of the Ryan home was not the result of an involuntary conversion or casualty loss of the residence, or, with respect to either or both petitioners, death, unemployment or a change in employment, divorce or legal separation, or a multiple-birth pregnancy. See sec. 1.121-3(e)(2), Income Tax Regs. Therefore, petitioners do not qualify for the prorated exclusion for unforeseen circumstances under section 121(c).

In view of the foregoing, petitioners are not entitled to exclude the gain from the sale of the Ryan home from gross income pursuant to section 121.

## Conclusion

We have considered all of the other arguments made by petitioners, and, to the extent that we have not specifically addressed them, we conclude that they do not support a result contrary to that reached herein.

To reflect our disposition of the disputed issue, as well as respondent's concession,

Decision will be entered
under Rule 155.