AL HAKEEM ABDUL RASHEED, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rasheed v. Commissioner
Docket No. 12653-79.
United States Tax Court
T.C. Memo 1985-310; 1985 Tax Ct. Memo LEXIS 327; 50 T.C.M. (CCH) 225; T.C.M. (RIA) 85310; June 25, 1985. Al Hakeem Abdul Rasheed, pro se. Neil O. Abreu, for the respondent. HAMBLEN MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: Respondent determined a deficiency in the amount of $1,702.973.72 in petitioner's 1978 Federal Income taxes. The issues for decision *328 are: (1) whether funds converted by petitioner to his own use from a "church" are includible in petitioner's gross income; and (2) whether the maximum tax rate on petitioner's income is limited to 50 percent under section 1348. [1]
FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. [2] The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided in Alameda County, California, when he filed his petition in this case. In 1977, petitioner incorporated the Church of Hakeem, Inc. ("Church") as a California non-profit corporation. Petitioner personally drafted the articles of incorporation and by-laws, which provided that the organization's specific and primary purpose was to operate as a church for religious purposes. In March of 1977, petitioner *329 applied on behalf of the Church for an exemption under section 501(c)(3). Based upon the information he supplied, respondent determined that the Church was exempt from Federal income tax under section 501(c)(3). In 1980, respondent retroactively revoked this determination. Petitioner served as a director and president of the Church. Although other individuals ostensibly served as officers and directors of the Church in 1978, petitioner exercised complete control over all Church affairs, including membership and finances. The by-laws required annual meetings of the members of the Church. No such annual meetings were ever held. The only requirement to join the Church was the payment of an initial membership fee, which gradually increased from $25.00 to $500.00. In 1977, the Church instituted the "Dare to be Rich" program. The Church distributed brochures which stated: You Can Turn $25 into $100 in 70 Days $250 into $1000 in 90 Days $25,000 into $100,000 in 9 months The brochures made the following representation: The Church of Hakeem, Inc. is an international as well as a national church function. International and national investments return "Profits" *330 which the Church does not choose to keep. So it distributes its "Profits" to its active ministers only. These "Profits" we call an "Increase of God." Your 400% return on "Donation" comes out of church "Profits." So in effect the Church of Hakeem doesn't "profit" -- it "serves." The Church had no investments, and the "increases" paid to early donors were paid with the funds received from later donors. The Church conducted "celebrations", where prospective donors could contribute funds. At these "celebrations" there was a money room, where money was received and receipts given. After the "celebrations", a Brink's truck brought the money back to the Church offices. The Church owned numerous luxury automobiles, including a white 1974 Rolls Royce that petitioner drove daily. The Church purchased a 1978 red Cornische Rolls Royce on December 7, 1978, for $105,000. Petitioner had wanted such a car, and he signed all the documentation in connection with its purchase. Petitioner acquired expensive jewelry, including a fine watch, rings and gold chains. He also purchased a mink coat in 1978. On July 10, 1978, petitioner purchased a diamond cluster ring for $9,729.00. *331 During the latter half of 1978, petitioner opened four bank accounts in his own name. He was the sole authorized signatory on these accounts. He deposited $2,055,479.10 into these accounts in 1978. These accounts earned interest amounting to at least $4477.21. [3] Petitioner made no withdrawals from these accounts in 1978. From January 10, 1979, through January 17, 1979, petitioner deposited $1,102,500 into twelve separate personal bank accounts. Of this amount, $1,000,000 was transferred from one of the four accounts he opened in 1978. In 1978, petitioner discussed his desire to purchase a yacht with members of the Church. In October of 1978, petitioner purchased a yacht for $918,583.25. Petitioner personally executed the yacht sales agreement and the boat berthing agreement. Subsequently, petitioner executed five seperate Coast Guard forms in his own name, reflecting that he was the owner of the boat. On January 17, 1979, respondent made two termination assessments against petitioner *332 in the amounts of $623,853 and $910,000. After the termination assessments, respondent levied upon two of petitioner's bank accounts, and seized the yacht and the 1978 Rolls Royce. The amount collected and credited to petitioner's account, after collection costs, totaled $1,465,416.70. A class action wrongful levy suit was instituted by members of the Church in the United States District Court. The suit was settled and the class received a judgment against the United States in the principal amount of $1,104,166.32. The judgment was satisfied and petitioner's account debited by the amount of the judgment. In May of 1979, petitioner filed his individual Federal income tax return for the taxable year 1978. Petitioner reported total income of $19,200. He stated that this represented his net "minister's rental allowance." Petitioner was indicted in the District Court of the Northern District of California on six counts of mail fraud arising out of his activities with the Church. Petitioner was convicted on all counts of mail fraud and his conviction was affirmed. [4]
*333 In the notice of deficiency, respondent determined petitioner's additional unreported income by totaling: (1) the amount expended by petitioner in purchasing the yacht; (2) the amount expended by petitioner in purchasing the diamond ring; (3) the amounts petitioner deposited in the four bank accounts; and (4) the interest income on the bank accounts. OPINION Section 61 states the general rule that gross income includes all income from whatever source derived. This phrase encompasses all "accessions to wealth, clearly realized, and over which the taxpayers have complete dominion." Commissioner v. Glenshaw Glass Co.,348 U.S. 426, 431 (1955). A gain constitutes taxable income when the recipient of the gain has such control over it that, as a practical matter, he derives a readily realizable economic value from it. Rutkin v. United States,343 U.S. 130, 137 (1952). It is well settled that gains from illegal activities are includible in gross income. [5] See James v. United States,366 U.S. 213 (1961); Rutkin v. United States,supra; *334 United States v. Rochelle,384 F.2d 748, 751 (5th Cir. 1967). In the instant case, respondent's determination is presumptively correct and petitioner bears the burden of proving it is incorrect. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Petitioner has failed to carry this burden. The record makes it plain that petitioner was engaged in an illegal pyramid scheme. Since petitioner had total control over its operations, the Church simply functioned as petitioner's alter ego in implementing the "Dare to be Rich" swindle. Petitioner used the proceeds he received to lead a life of comfort and luxury. Petitioner argues that: (1) he placed the funds in the four bank accounts as a "trustee" of the Church and he did not own or control this money; and (2) he purchased the yacht while acting as an agent of the Church. Petitioner presented no credible evidence to support these assertions. His own testimony was incredible and self-serving. Petitioner's control over the funds he expended or placed in the bank accounts was absolute. Petitioner *335 moved these funds at will. We find, therefore, that these amounts were includible in petitioner's 1978 gross income. Petitioner asserts that his maximum tax should be limited by the provisions of section 1348. This section limited the tax on personal service income to fifty percent. [6] Personal service income was defined in Section 1348(b)(1)(A) as "any income which is earned income within the meaning of * * * section 911(b)." Under section 911(b), earned income is defined as "wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered * * *." Petitioner failed to show that he received these funds as personal service income. These funds were gained through his "Ponzi" scheme and they were not wages, salaries or professional fees.These funds were clearly not received for any services "actually rendered" by petitioner. Since petitioner did not receive the funds as earned income, we find that his tax liability is not limited by section *336 1348. Petitioner failed to show any error in respondent's determination of his income. We, therefore, sustain the deficiency as computed by respondent for petitioner's 1978 taxable year. We have considered petitioner's other arguments and find them unpersuasive. [7]
Based on the foregoing, Decisions will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Because petitioner refused to enter into a stipulation, respondent's proposed stipulation of facts was accepted as established under Rule 91(f).↩
3. In his notice of deficiency, respondent determined petitioner only received interest income of $3,920.21. Respondent, however, did not assert an increase in the deficiency.↩
4. See United States v. Rasheed,663 F.2d 843 (9th Cir. 1981), cert. denied subnom. Phillips v. United States,454 U.S. 1157↩ (1982).
5. See also O'Sheeran v. Commissioner,T.C. Memo. 1983-702↩.
6. Sec. 1348↩ was repealed for taxable years beginning after December 31, 1981.
7. We have considered and rejected petitioner's unsupported assertions that he "donated" the bank accounts and the yacht to the Church.↩