T.C. Summary Opinion 2007-69


UNITED STATES TAX COURT



REINALDO & ERNESTINA MORACEN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent



Docket No. 21949-05S.            Filed May 1, 2007.


<u>Ruth Moracen Knight</u>, for petitioners.

<u>Laura A. Price</u>, for respondent.



PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard
pursuant to the provisions of section 7463 of the Internal
Revenue Code in effect when the petition was filed.  Pursuant to
section 7463(b), the decision to be entered is not reviewable by
any other court, and this opinion shall not be treated as
precedent for any other case.  Unless otherwise indicated,
subsequent section references are to the Internal Revenue Code in

effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a $6,391 deficiency in petitioners' 2003 Federal income tax and a $1,278 accuracy-related penalty pursuant to section 6662(a).[1] The issues for decision are: (1) Whether petitioners' gross income includes annuity proceeds of $53,885 and related interest income of $1,136, and (2) whether petitioners are liable for the accuracy-related penalty.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits, as well as additional exhibits introduced at trial, are incorporated herein by this reference. At the time the petition was filed, petitioners resided in Zephyrhills, Florida. References to petitioner in the singular are to Ernestina Moracen.

Petitioner's stepmother, Celia Knight, died in July 2003. Before her death, Mrs. Knight had purchased an annuity contract from Travelers Life & Annuity (Travelers). Petitioner was a named beneficiary of the annuity contract, as was Mrs. Knight's sister, Gladys Becquer. Petitioner's father, Pedro Knight, was not named as a beneficiary.

After Mrs. Knight died, Luis Falcon was appointed executor of the estate. Travelers issued two checks to petitioner

---

[1] All amounts are rounded to the nearest dollar.

totaling $415,266. Of that amount, $414,130 represented proceeds from the annuity contract, while $1,136 represented interest that accrued before the proceeds were distributed. At Mr. Falcon's behest, each check was deposited into a joint bank account in the names of petitioner and Ms. Becquer. Petitioner and Ms. Becquer had signature authority over the joint account.[2] In August 2003, petitioner wrote a check from the account to her father in the amount of $415,000.

In 2004, Travelers issued petitioner a Form 1099-R, Distributions from Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., listing a gross distribution of $414,130 and a taxable amount of $53,886. Travelers also issued petitioner a Form 1099-INT, Interest Income, listing taxable interest income of $1,136. Petitioners did not report any portion of the annuity proceeds or interest income on their joint 2003 tax return.

Respondent issued petitioners a notice of deficiency in August 2005. Respondent determined that petitioners must include in gross income $53,885 of the annuity proceeds and $1,136 of interest income. Respondent also determined an accuracy-related

---

[2] Ms. Becquer separately received and deposited into the joint account proceeds from Mrs. Knight's annuity contract. Those proceeds are not at issue in this case.

penalty.[3]  Petitioners filed a timely petition for review of respondent's determination.

In February 2006, petitioner filed suit against her father and Mr. Falcon in United States District Court alleging that they "fraudulently and unlawfully converted the proceeds" of the annuity contract.  The complaint states in part:  (1) Mr. Falcon told petitioner that the annuity proceeds, in fact, belonged to Mr. Knight; (2) Mr. Falcon instructed petitioner to write the check for $415,000 in order to return the proceeds to Mr. Knight; and (3) petitioner did not know she was a beneficiary of the annuity contract until respondent began examining petitioners' 2003 tax return.

## Discussion

In general, the Commissioner's determinations set forth in a notice of deficiency are presumed correct, and the taxpayer bears the burden of showing that the determinations are in error.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Pursuant to section 7491(a), the burden of proof as to factual matters shifts to the Commissioner under certain circumstances. Petitioners have neither alleged that section 7491(a) applies nor established their compliance with the requirements of section 7491(a)(2)(A) and (B) to substantiate items, maintain records,

---

[3] We assume the difference between the $53,886 taxable amount shown on the information return and the $53,885 listed in the notice of deficiency is due to rounding.

and cooperate fully with respondent's reasonable requests. Petitioners therefore bear the burden of proof.

I.    Unreported Income

Section 61 provides that "gross income means all income from whatever source derived".  The Supreme Court has held that gross income includes all "'accessions to wealth, clearly realized, and over which the taxpayers have complete dominion.'"[4]  James v. United States, 366 U.S. 213, 219 (1961) (quoting Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955)).  A taxpayer has dominion and control over cash when he has the freedom to use it at will, even though that freedom may be assailable by persons with better title.  Rutkin v. United States, 343 U.S. 130, 137 (1952); Ianniello v. Commissioner, 98 T.C. 165, 173 (1992).

Petitioner does not dispute that she was a beneficiary of Mrs. Knight's annuity contract.  Nor does petitioner dispute that a total of $415,266 was deposited into an account over which she had signature authority.  Accordingly, petitioner had dominion

_____

[4] Sec. 101(a)(1) provides that gross income does not include the proceeds of a life insurance contract paid by reason of the death of the insured, subject to certain limitations.  See sec. 101(c), (f).  Respondent contends that the $53,885 of annuity proceeds and the $1,136 of interest income are taxable. Petitioners do not dispute the taxability of these amounts; rather, petitioners believe they should not be liable for the tax because they did not receive the benefit of the annuity proceeds or interest income.  We therefore limit our discussion to whether petitioners had dominion and control over the amounts at issue, and whether petitioners are entitled to a deduction under sec. 165(a), discussed infra.

and control over the annuity proceeds, even if her father also claimed title to the proceeds. See <u>Rutkin v. United States</u>, <u>supra</u>.

Petitioner nevertheless argues that she is not liable for tax because of the alleged wrongdoing of Mr. Knight and Mr. Falcon described in the District Court complaint. Even if petitioner's allegations are true, however, petitioner had the freedom to use the annuity proceeds at will. See <u>Ianniello v. Commissioner</u>, <u>supra</u>. Accordingly, petitioners must include in gross income the $53,885 of annuity proceeds and the $1,136 of interest income.

Although it is not clear, petitioners may be arguing that they suffered a theft loss. Section 165(a) allows a deduction for "any loss sustained during the taxable year and not compensated for by insurance or otherwise." A loss arising from theft is treated as sustained during the year in which the taxpayer discovers such loss. Sec. 165(e). If in the year of discovery there is a claim for reimbursement that has a reasonable prospect for recovery, a loss is not considered sustained until the tax year in which it can be ascertained with reasonable certainty. Secs. 1.165-1(d)(3), 1.165-8(a)(2), Income Tax Regs. Filing a lawsuit to recover a purported loss gives rise to an inference that the taxpayer has such a claim. <u>Dawn v.</u>

Commissioner, 675 F.2d 1077, 1078 (9th Cir. 1982), affg. T.C. Memo. 1979-479; Reed v. Commissioner, T.C. Memo. 1986-213.

We express no opinion on whether the actions of Mr. Knight and Mr. Falcon constitute theft under State law. Petitioner testified that the lawsuit against her father and Mr. Falcon to recover the annuity proceeds was still pending in District Court. The pending lawsuit gives rise to the inference that petitioners had a reasonable prospect for recovery as of the date of trial. See Dawn v. Commissioner, supra. Nothing in the record rebuts this inference. Accordingly, any theft loss petitioners suffered is not considered sustained during 2003. See secs. 1.165-1(d)(3), 1.165-8(a)(2), Income Tax Regs. Respondent's determination on this issue is sustained.

## II. Accuracy-Related Penalty

Section 6662(a) provides that a taxpayer may be liable for a penalty of 20 percent of the portion of an underpayment of tax attributable to negligence or disregard of rules or regulations. Sec. 6662(a) and (b)(1). Negligence includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws. Sec. 1.6662-3(b)(1), Income Tax Regs. Disregard of rules or regulations includes any careless, reckless, or intentional disregard. Sec. 1.6662-3(b)(2), Income Tax Regs. The Commissioner bears the burden of production with

respect to the accuracy-related penalty.  See sec. 7491(c);
Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

An exception to the section 6662 penalty applies when the
taxpayer demonstrates:  (1) There was reasonable cause for the
underpayment, and (2) the taxpayer acted in good faith with
respect to the underpayment.  Sec. 6664(c).  Whether the taxpayer
acted with reasonable cause and in good faith is determined by
the relevant facts and circumstances on a case-by-case basis.
See Stubblefield v. Commissioner, T.C. Memo. 1996-537; sec.
1.6664-4(b)(1), Income Tax Regs.  "Circumstances that may
indicate reasonable cause and good faith include an honest
misunderstanding of fact or law that is reasonable in light of
all the facts and circumstances, including the experience,
knowledge, and education of the taxpayer."  Sec. 1.6664-4(b)(1),
Income Tax Regs.

It does not appear that petitioner's husband was involved in
any of the above-described dealings with petitioner's father and
Mr. Falcon.  We therefore focus on petitioner.  Petitioner
stopped attending school during the seventh grade and has a
limited command of English.  It is not clear what petitioner
understood when the funds were deposited into the joint account
or when she signed the check payable to her father in the amount
of $415,000.  It is clear that petitioner relied upon Mr.
Falcon's advice during these financial transactions.  Taking into

consideration all of the facts and circumstances contained in this record, we conclude that petitioner acted in good faith and that her reliance on Mr. Falcon as executor of her stepmother's estate was not unreasonable.  The negligence penalty therefore should not be imposed in this case.

To reflect the forgoing,

<u>Decision will be entered for respondent as to the deficiency and for petitioners as to the accuracy-related penalty under section 6662(a)</u>.