T.C. Memo. 2009-199


UNITED STATES TAX COURT


ROBERT F. AND JOY MELVIN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 20683-07.            Filed September 8, 2009.


<u>Steven D. Morford</u>, for petitioners.

<u>Heidi I. Hansen</u>, for respondent.


MEMORANDUM OPINION


HALPERN, <u>Judge</u>:  By notice of deficiency (the notice),
respondent determined a deficiency of $3,135 in petitioners'
Federal income tax for 2005.  In that year, petitioners settled a
credit card debt.  After concessions, the issues for decision are
whether petitioners had $8,768 of discharge of indebtedness
income arising from that settlement and whether they may deduct

the $2,126 fee they paid to the agency that negotiated that settlement.[1]  We find that petitioners had $8,768 of discharge of indebtedness income and that they may not deduct the fee.

Unless otherwise stated, section references are to the Internal Revenue Code in effect for 2005 and Rule references are to the Tax Court Rules of Practice and Procedure.

Some facts are stipulated and are so found.  The stipulation of facts, with accompanying exhibits, is incorporated herein by this reference.  All exhibits in the record are joint exhibits and, although this case did go to trial, neither side presented witnesses.

We round all dollar amounts to the nearest dollar.

## Background

At the time they filed the petition, petitioners resided in Arizona.  Petitioners are husband and wife.

Robert F. Melvin (petitioner) had a credit card account with Chase Manhattan Bank USA, NA (Chase).  In May 2005, Arbitronix, Inc. (Arbitronix), negotiated a settlement with Chase on behalf of petitioner, whereby Chase agreed to accept $4,579 in full

---

[1]Contrary to their argument in the petition, petitioners concede they are not entitled to any interest deduction with respect to the discharge of indebtedness income.  Petitioners also concede they failed to report $2 in taxable dividends.

satisfaction of petitioner's balance of $13,084.[2]  Arbitronix

charged petitioner a fee of 25 percent of the $8,505 savings, or

$2,126.[3]  Chase issued petitioner Form 1099-C, Cancellation of

Debt, which stated $8,768 as the amount of debt canceled.

In June 2007, respondent timely issued the notice.  In

September 2007, petitioners amended their 2005 Federal income tax

return to include $8,768 of discharge of indebtedness income.

At trial, petitioners conceded that they had $8,768 of

discharge of indebtedness income.  At that time, they moved to

amend their pleadings to include the claim that they should be

able to deduct the fee paid to Arbitronix.  Respondent did not

object, and we granted the motion.[4]  See Rule 41.

---

[2]On brief, petitioners refer to the settlement as $2,000.
The reason is unclear.

[3]Those figures suggest that petitioner had discharge of
indebtedness income of no more than $8,505.  Nevertheless,
petitioners do not contest respondent's figure--indeed, at trial,
petitioners conceded it.  See infra.  We therefore do not address
the discrepancy.

[4]Petitioners also moved to amend their pleadings to include
the claim that they were entitled to deduct a charitable
contribution not previously deducted on their 2005 Federal income
tax return.  Respondent's counsel objected on the ground that she
thought petitioners had dropped the issue.  We denied
petitioners' motion on the ground that granting it would be
prejudicial to respondent.

## Discussion

### I. Petitioners' Argument

On brief, petitioners state:  "The issuance of a Form 1099-C by * * * Chase * * * in the amount of $8,768 is * * * dispositive of [neither] the existence of, nor the amount of, cancellation of indebtedness income as described in IRC §61(a)(12)."  Petitioners argue that "this is a case of a disputed debt or contested liability."  Petitioners claim that because "some charges * * * were erroneous" and the "interest, fees and penalties were invalid", they hired Arbitronix to be their agent and to contest the sum Chase alleged they owed.  Petitioners argue that the settlement is the "amount of debt to be recognized for tax purposes" and that the "excess of the original (disputed) debt over * * * [the settlement] should be disregarded for both accounting and tax purposes."  Because Chase accepted the settlement "as full satisfaction of the disputed debt", petitioners conclude that there should be "no tax consequence to the Petitioners upon payment."

On brief, petitioners also argue that, if we find that petitioners had discharge of indebtedness income, they should be permitted to deduct the fee paid to Arbitronix.  Petitioners concede, however, that they are not entitled to deduct the fee under section 162 or 212.  Instead, they argue that "part and parcel of the 'income' assessed through I.R.C. §61(a)(12) is the

reduction or offset of the amount so calculated due to amounts * * * [that] do not provide a benefit".

II.  Respondent's Argument

First, respondent observes that petitioners amended their 2005 Federal income tax return to include $8,768 of discharge of indebtedness income and that petitioners conceded at trial that in 2005 they had $8,768 of discharge of indebtedness income. Respondent argues that petitioners are bound by their concession and may not contest the discharge of indebtedness income.

Second, respondent argues that, even if petitioners did not concede that they received discharge of indebtedness income, petitioners have failed to satisfy their burden of proving that they disputed the underlying liability and that they did not have $8,768 of discharge of indebtedness income.

Third, respondent denies that petitioners are entitled to any deduction with respect to the fee paid to Arbitronix, arguing that petitioners have failed to satisfy their burden of proof.

III.  Analysis

Respondent argues that petitioners are precluded from denying that they had discharge of indebtedness income because they conceded the issue.  We agree with respondent.  See Church of Scientology v. Commissioner, 83 T.C. 381, 524 (1984) ("[A] concession in open court * * * [is] the equivalent of a stipulation."), affd. 823 F.2d 1310 (9th Cir. 1987).

Nonetheless, we address petitioners' argument and find that petitioners have failed to introduce credible evidence that they disputed the debt.

Petitioners bear the burden of proof.  See Rule 142(a).[5] Petitioners argue that, through Arbitronix, petitioner contested his debt to Chase.  The mere fact that Chase settled for less than the full amount of petitioner's debt, however, is insufficient to establish that the debt was disputed.  See, e.g., Rood v. Commissioner, T.C. Memo. 1996-248, affd. without published opinion 122 F.3d 1078 (11th Cir. 1997).  At trial, petitioners neither testified nor called witnesses to testify. Thus, the evidence in this case consists of only the stipulated exhibits.  Petitioners do not specify which exhibits support their position.  The only exhibits that could support their position are the Arbitronix invoice, the letter from Chase confirming the settlement, and the credit card statements, and we find that none does.  The Arbitronix invoice describes the debt forgiven as "savings" and the letter from Chase confirming the settlement states that if Chase did not receive the $4,579 payment before a certain date, then the "offer" would no longer be "valid".  Neither the invoice nor the letter in any way

[5]Because, among other things, petitioners have failed to introduce credible evidence that they disputed the debt, the burden of proof does not shift to respondent under sec. 7491(a). See sec. 7491(a)(1).

indicates the debt was disputed.  Moreover, the credit card statements reflect substantial purchases and cash advances and clearly illustrate how petitioners accrued the debt to Chase. Petitioners have not suggested which charges were "erroneous" and have not explained which interest, fees, and penalties were "invalid".  Petitioners have failed to satisfy their burden of proving that there was a dispute as to either the amount or the enforceability of their debt to Chase.  For that reason, we find that petitioners have $8,768 of discharge of indebtedness income for 2005.

We also agree with respondent that petitioners may not deduct the fee paid to Arbitronix.  Unless specifically excluded by a provision of the Internal Revenue Code, all income is subject to tax.  See, e.g., Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 430 (1955).  Moreover, petitioners must show the specific authority for any deduction they claim.  See, e.g., New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934) ("Obviously, therefore, a taxpayer seeking a deduction must be able to point to an applicable statute and show that he comes within its terms.").  Petitioners concede they are not entitled to deduct the fee under section 162 or 212.[6]  Petitioners assert

---

[6]Petitioners disclaim any deduction under sec. 162 because they had no trade or business in 2005; they disclaim any deduction under sec. 212 because they cannot claim miscellaneous itemized deductions when calculating their alternative minimum

(continued...)

that the authority for their deduction is section 61(a)(12) itself; that is, the section that requires them to include discharge of indebtedness income in gross income. Petitioners suggest that they received no monetary benefit from the cancellation of the debt and for that reason argue that they should be allowed to offset their "'phantom' income" with the "loss" they suffered when they paid the fee.[7] We cannot agree with petitioners. Section 61(a)(12) manifestly does not provide for any kind of deduction. Petitioners have failed to satisfy their burden of proof, and we deny them any deduction for the fee.

## IV. Conclusion

Petitioners have $8,768 in discharge of indebtedness income for 2005. They may not deduct the fee paid to Arbitronix.

Decision will be entered

for respondent.

---

[6](...continued)
tax. See secs. 56(b)(1), 67. Petitioners acknowledge that, on account of the alternative minimum tax, a miscellaneous itemized deduction will not decrease their tax liability.

[7]Notwithstanding petitioners' insinuation that the income sec. 61(a)(12) causes them to recognize is the result of some mere accounting trick, petitioners surely did receive a monetary benefit as a result of the cancellation of indebtedness. The credit card statements provide prima facie evidence of the benefits petitioners received. To be clear: Petitioners received goods and services (and cash advances) on credit; when Chase relieved them of their corresponding obligation to pay, petitioners without question received an "accession to income". See United States v. Kirby Lumber Co., 284 U.S. 1, 3 (1931).