T.C. Summary Opinion 2016-12

UNITED STATES TAX COURT

RODNEY J. GUARINO AND LAURAINE GUARINO, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4776-13S.                     Filed March 14, 2016.

Rodney J. Guarino and Lauraine Guarino, pro se.

Lori Amadei and Jordan Musen, for respondent.

SUMMARY OPINION

CARLUZZO, Special Trial Judge:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not

_____

[1]Unless otherwise indicated, subsequent section references are to the
Internal Revenue Code of 1986, as amended, in effect for the years in issue.  Rule
references are to the Tax Court Rules of Practice and Procedure.

reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated December 18, 2012 (notice), respondent determined deficiencies in, and imposed section 6662(a) accuracy-related penalties with respect to petitioners' Federal income tax as follows:

| Year | Deficiency | Penalty sec. 6662(a) |
|------|-----------|----------------------|
| 2008 | $26,404 | $5,280.80 |
| 2009 | 12,263 | 2,452.60 |

The issues for decision are whether: (1) income Rodney J. Guarino (petitioner) received from Platt Properties (Platt) in 2008 constitutes net earnings from self-employment subject to the section 1401 tax on self-employment income; (2) petitioners are entitled to deductions for losses sustained in a rental real estate activity; and (3) petitioners are liable for a section 6662(a) accuracy-related penalty for either year in issue.

## Background

Some of the facts have been stipulated and are so found. At the time the petition was filed, petitioners resided in California. At all times relevant here, they have been married to each other.

Petitioner holds a bachelor of science degree in accounting and a master's degree in tax law. During each year in issue petitioner was licensed in California as a real estate broker and was qualified to represent taxpayers before the Internal Revenue Service (IRS) as an enrolled agent. He brokered real estate mortgages and prepared Federal income tax returns as the sole proprietor of Westoaks Financial (Westoaks).

Through Westoaks petitioner originated and serviced residential and commercial real estate loans in California. Westoaks accepted mortgage loan applications from individuals and submitted the applications to various lenders. Sometimes Westoaks serviced a mortgage loan on behalf of a lender after the closing of the loan transaction.

On March 13, 2008, petitioners purchased a house from William Lyon Homes, Inc. (WLH), that they used as their residence (house). In connection with this purchase, and as shown in the "Final Addendum to Joint Purchase Agreement and Escrow Instructions", WLH agreed to pay a $40,000 broker fee to Platt, which is owned by petitioner's brother-in-law. Platt remitted $39,000 of the fee to petitioner in 2008. This payment is reported on a Form 1099-MISC, Miscellaneous Income, that Platt issued to petitioner for that year.

Petitioners also owned a single-family house in Red Bluff, California (Red Bluff property), that they held for rent and/or rented out in 2008 and 2009. In 2009 petitioners purchased a single-family house in Santa Clarita, California (Santa Clarita property), which they held for rent and/or rented out during that year.

In 2008 petitioners hired a property management company to operate and manage the Red Bluff property. Among other things, the property management company was responsible for collecting rent from petitioners' tenants. Otherwise, as between petitioners, petitioner had more responsibility for the management of the Red Bluff property and the Santa Clarita property (rental properties). From time to time during each year in issue, he made repairs and renovations to the rental properties, interviewed prospective tenants, and negotiated leases. If supplies or building materials were needed in order to maintain the rental properties, then petitioner routinely traveled to various locations to purchase those supplies and/or materials. Mrs. Guarino and petitioners' children were also involved in the management and/or maintenance of the rental properties during the years in issue, but we cannot tell with any degree of precision how much time each of those individuals might have spent providing service in connection with the rental properties or what services might have been provided. Neither petitioner

kept a contemporaneous log or record that shows the amount of time either spent or specific services either provided with respect to any specific rental property on any specific date.

During respondent's examination of petitioners' 2008 and 2009 Federal income tax returns (returns)[2] petitioner prepared a log (first log) of activities related to the Red Bluff property. The first log identifies 10 dates on which petitioner, Mrs. Guarino, or their children provided services related to the Red Bluff property, but none of the entries identifies the amount of time spent. Two of the entries relate to a year not before the Court.

While the years here in dispute were under consideration by respondent's Appeals Office, petitioner prepared a second log (second log) of activities related to the Red Bluff property. The second log includes activities on six dates, all in 2008. According to the second log, petitioners and/or their children spent a total of 216 hours providing services to the Red Bluff property during 2008. No entry in the log identifies who among petitioners and/or their children performed those services.

---

[2]Petitioners submitted an amended return for each year in issue. Because it is not important to distinguish between the original return and the amended return for either year in issue, references to a "return" in this opinion might relate to an original return or an amended return, as appropriate.

After this case was commenced, petitioner prepared a third log (third log) on which he reported activities related to: (1) the Red Bluff property and Westoaks for each year in issue and (2) the Santa Clarita property for 2009. The third log has numerous entries with respect to each rental property and includes entries related to petitioner's activities as the sole proprietor of Westoaks. Each entry includes a date on which services were performed in connection with the rental properties and/or Westoaks and the amount of time spent providing each service. The entries associated with Westoaks all relate to petitioner. It is not clear who performed the services shown in the portions of the logs dedicated to the rental properties.

Shortly before this case was called for trial, petitioner amended the third log (amended third log) to correct discrepancies he discovered with respect to dates and time spent on particular activities. The amended third log is similar but not identical to the third log. According to the amended third log, in 2008: (1) petitioner spent 882.5 hours providing mortgage brokerage services and (2) petitioners and/or their children spent 129.5 hours providing services in connection with the Red Bluff property. According to the amended third log, in 2009: (1) petitioner spent 752.6 hours providing mortgage brokerage services,

(2) petitioner spent 47.95 hours providing leasing services, and (3) petitioners and/or their children spent 233.25 hours on the rental properties.

Petitioner prepared the returns. As relevant here, each return includes a Schedule E, Supplemental Income and Loss, on which a loss deduction attributable to the rental properties is claimed. Petitioners' 2008 return also includes a Schedule C, Profit or Loss From Business, for Westoaks. The income reported on the Schedule C includes that payment that petitioner received from Platt and a $39,000 deduction for "MISC REAL ESTATE FEES".

As relevant here, in the notice respondent: (1) disallowed the above-referenced $39,000 deduction and increased petitioner's section 1401 self-employment tax accordingly; (2) disallowed the rental loss for each year in issue; and (3) imposed a section 6662(a) accuracy-related penalty also for each year in issue. Adjustments made in the notice that have been agreed to between the parties or conceded or are computational will not be discussed.

## Discussion

### I. Income From Platt

Petitioners reported the income petitioner received from Platt and claimed a deduction in the same amount on Westoaks' Schedule C included with their 2008 return. Petitioners now concede that they are not entitled to that deduction. They

now argue, however, that the income should not have been reported on the Schedule C but is properly reported as "other income", not attributable to a trade or business. We agree.

The $39,000 certainly was an accretion to petitioners' wealth, <u>see</u> <u>Commissioner v. Glenshaw Glass Co.</u>, 348 U.S. 426, 429 (1955), and is includable in their income, but the income was received in connection with a personal transaction, not in connection with the trade or business of either petitioner. Because the income is not properly includable in the net profit from either of petitioners' trades or businesses, it does not fit within the definition of net earnings from self-employment, <u>see</u> sec. 1402(a), and the income is not subject to the section 1401(a) tax on self-employment income.

## II. Rental Loss Deductions

As we have observed in countless opinions, deductions are a matter of legislative grace, and the taxpayer bears the burden of proof to establish entitlement to any claimed deduction.[3] Rule 142(a); <u>INDOPCO, Inc. v.</u> <u>Commissioner</u>, 503 U.S. 79, 84 (1992); <u>New Colonial Ice Co. v. Commissioner</u>, 292 U.S. 435, 440 (1934). A taxpayer claiming a deduction on a Federal income

---

[3]Petitioners do not claim and the record does not demonstrate that the provisions of sec. 7491(a) are applicable, and we proceed as though they are not.

tax return must demonstrate that the deduction is allowable pursuant to some statutory provision and must further substantiate that the expense to which the deduction relates has been paid or incurred.  See sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976); sec. 1.6001-1(a), Income Tax Regs.

According to respondent, the rental loss incurred for each year is deductible only as allowable under section 469--a point petitioners do not dispute.[4]  In general and as relevant here, that section provides that an individual is not entitled to a deduction for a loss from a passive activity.  See sec. 469(a), (d).  Subject to an exception set forth in the statute, by definition a rental activity, including a rental real estate activity, is treated as a passive activity.  See sec. 469(c)(2).  Section 469 is complex, and it is the topic of numerous opinions issued by this Court.  Because the parties agree on how section 469 works, however, we need not delve into many of those complexities, and we focus only on the provisions of that statute at the center of the parties' dispute.

According to petitioners, petitioner's mortgage brokerage activity is a "real property trade or business" within the meaning of section 469(c)(7)(C).  Petitioners go on to argue that because petitioner spent more than 750 hours

---

[4]The amounts of the losses are not in dispute.

providing services in connection with his mortgage brokerage business for both years in issue, and because he spent more time in that business than he did in any other trades for business during each of those years, for both years in issue he is a taxpayer described in section 469(c)(7), which provides:

(7)  Special rules for taxpayers in real property business.

    (A)  In general.--If this paragraph applies to any taxpayer for a taxable year--

        (i) paragraph (2) shall not apply to any rental real estate activity of such taxpayer for such taxable year, and

        (ii) this section shall be applied as if each interest of the taxpayer in rental real estate were a separate activity.

Notwithstanding clause (ii), a taxpayer may elect to treat all interests in rental real estate as one activity.  Nothing in the preceding provisions of this subparagraph shall be construed as affecting the determination of whether the taxpayer materially participates with respect to any interest in a limited partnership as a limited partner.

    (B)  Taxpayers to whom paragraph applies.--This paragraph shall apply to a taxpayer for a taxable year if--

        (i) more than one-half of the personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates, and

        (ii) such taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates.

In the case of a joint return, the requirements of the preceding sentence are satisfied if and only if either spouse separately satisfies such requirements. For purposes of the preceding sentence, activities in which a spouse materially participates shall be determined under subsection (h).

(C) Real property trade or business.--For purposes of this paragraph, the term "real property trade or business" means any real property development, redevelopment, construction, reconstruction, acquisition, conversion, rental, operation, management, leasing, or brokerage trade or business.

Taking section 469(c)(7) into account and given the manner in which section 469 works, simply put, if petitioners are correct, then they are entitled to the rental loss deductions here in dispute. Respondent, however, hardly agrees that they are correct.

According to respondent, because none of petitioners' various logs is reliable enough to establish the amount of time petitioner spent providing services in any activity, there is no credible support in the record for a finding that petitioner spent more than 750 hours in real property trades or businesses. In the absence of such a finding, petitioners' position, of course, must be rejected. Perhaps more importantly, respondent disagrees that petitioner's mortgage brokerage business is a "real property trade or business". Respondent argues that mortgage brokerage services are in essence financing services. According to respondent, financing services do not qualify as a real property trade or business

within the meaning of section 469(c)(7)(C).  Given the way section 469 works, if respondent is correct on either point, then petitioners are not entitled to the rental loss deductions as claimed on their returns.[5]

Like respondent, we have concerns about the reliability of petitioners' logs. We need not address those concerns, however, because for the following reasons we find that petitioner's mortgage brokerage business is not a real property trade or business within the meaning of section 469(c)(7)(C).

Section 469(c)(7)(C) defines a real property trade or business to mean "any real property development, redevelopment, construction, reconstruction, acquisition, conversion, rental, operation, management, leasing, or brokerage trade or business."  Petitioners focus on the word "brokerage" contained in that section and argue that petitioner's mortgage brokerage business is contemplated by the statute.  We disagree.  Petitioners' argument ignores the words "real property" that precede the specific activities listed in the statute; those words modify each of those activities.  While petitioner's mortgage brokerage activity constitutes a "brokerage" trade or business, it does not constitute a "real property brokerage" trade or business.  Petitioner was not during either year in issue brokering real

_____

[5]Because of their adjusted gross income for each year in issue petitioners are not otherwise entitled to a portion of the rental loss deduction allowable by sec. 469(i).

estate; he was brokering financial services. The legislative history of the statute supports the consequence of this distinction. Congress considered including "financing operations" in the activities listed in section 469(c)(7)(C) but specifically did not do so. See H.R. 2264, 103d Cong. (1993); H.R. 1414, 102d Cong. (1991); S. 1257, 102d Cong. (1991); H.R. 3732, 101st Cong. (1989); S. 2384, 101st Cong. (1989); see also 138 Cong. Rec. H612-02 (Feb. 26, 1992).

Because petitioner's mortgage brokerage services relate to the origination and servicing of residential and commercial real estate loans--financing operations--we find that the hours petitioner performed with respect to that activity are not included in the definition of a real property trade or business for purposes of section 469(c)(7)(C). To the extent that some of the ancillary services petitioner provided by and through Westoaks during the years in issue fall within the definition of real property brokerage, he did not keep a sufficiently reliable log showing how much of his time was dedicated to real property brokerage, and we cannot otherwise make that determination from his testimony or any of the other evidence admitted in this case.

Assuming, without finding, that petitioner's amended third log is accurate, not treating the hours attributable to petitioner's mortgage brokerage activities as services provided in connection with a "real property trade or business" causes

petitioner to fail both tests set forth in section 469(c)(7) for both years in issue.
Accordingly, petitioner is not a taxpayer described in section 469(c)(7) for either
of those years. It follows that the rental loss deductions here in dispute are subject
to the limitations imposed in section 469. Respondent's determinations to that end
are sustained.

## III. Accuracy-Related Penalty

Section 6662(a) imposes a penalty of 20% of the portion of the
underpayment of tax attributable to, among other things, a substantial
understatement of income tax. Sec. 6662(b)(2). An understatement of income tax
is substantial within the meaning of section 6662 if, as relevant here, the
understatement exceeds $5,000. See sec. 6662(d); sec. 1.6662-4(b), Income Tax
Regs.

Respondent bears the burden of production with respect to the imposition of
the penalty imposed in the notice and here in dispute, see sec. 7491(c), and that
burden has been satisfied because the understatement of income tax (here
computed in the same manner as the deficiency), will exceed $5,000 for each year
in issue, see secs. 6211, 6662(d)(2), 6664(a). That being so, it is petitioners'
burden to establish that the imposition of the penalty is not appropriate. See

Higbee v. Commissioner, 116 T.C. 438, 447 (2001); see also Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Section 6664(c)(1) provides that the section 6662(a) accuracy-related penalty does not apply to any portion of an underpayment if the taxpayer establishes that there was reasonable cause for, and the taxpayer acted in good faith with respect to, the underpayment. Sec. 1.6664-4(a), Income Tax Regs. The determination of whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account the pertinent facts and circumstances. Id. para. (b)(1). Reliance upon the Commissioner's publications can protect a taxpayer against the imposition of a section 6662(a) accuracy-related penalty. See Howard v. Commissioner, T.C. Memo. 2015-38.

According to petitioners, they relied upon IRS Publication 551, Basis of Assets, in concluding that they were entitled to the $39,000 deduction they now concede. According to that publication, "rebates treated as adjustments to the sales price" "reduce the basis of property", which petitioners claim to have done with respect to the house. Nonetheless, nothing in IRS Publication 551 provides authority for the deduction of a rebate as a trade or business expense, nor did petitioners actually receive a "rebate" on the purchase price of the house. Given petitioner's education and professional experience, petitioners' reliance upon IRS

Publication 551 in support of the deduction they now concede was not reasonable. Furthermore, petitioners have not provided any explanation for the portions of the underpayments of tax attributable to their other concessions. Accordingly, they are liable for section 6662(a) accuracy-related penalties on the portions of the underpayments of tax attributable to their concessions.

The resolution of petitioners' entitlement to the rental loss deductions is made on technical grounds, i.e., whether mortgage brokerage constitutes real property brokerage for purposes of section 469(c)(7). That being so, and although we have rejected petitioners' position that it does, we find that they acted reasonably and in good faith in taking that position. It follows that for each year in issue they are not liable for a section 6662(a) accuracy-related penalty with respect to the portion of the underpayment of tax attributable to the disallowance of the rental loss deduction.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.