T.C. Memo. 2017-185

UNITED STATES TAX COURT

THOMAS JOSEPH RITTER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1584-16.                                    Filed September 19, 2017.

Thomas Joseph Ritter, pro se.

Richard L. Wooldridge, for respondent.

MEMORANDUM OPINION

CHIECHI, Judge:  Respondent determined a deficiency in, and an accuracy-related penalty under section 6662(a)[1] on, petitioner's Federal income tax (tax) for his taxable year 2013 of $7,250 and $1,450, respectively.

---

[1]All section references are to the Internal Revenue Code (Code) in effect for the year at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

**[*2]**   The issue remaining for decision for petitioner's taxable year 2013 is whether the $31,250 that he received in that year from a certain qualified settlement fund is includible in gross income.[2]  We hold that it is.

## Background

The facts in this case, which the parties submitted under Rule 122, have been stipulated by the parties and are so found.

Petitioner, Thomas Joseph Ritter, resided in Illinois at the time he filed the petition.

On December 7, 2009, JP Morgan Chase Bank (Chase Bank) filed a complaint to foreclose mortgage with the Chancery Court of Bureau County, Illinois (chancery court), in which it sought to foreclose with respect to the mortgage loan on petitioner's then principal residence.  On January 20, 2010, that court entered a judgment of foreclosure against petitioner and in favor of Chase Bank.

On March 8, 2010, petitioner filed a petition with the U.S. Bankruptcy Court for the Central District of Illinois (bankruptcy court) under chapter 7 of title 11 of the U.S. Code (chapter 7).  On March 17, 2010, Chase Bank filed a motion

---

[2]Respondent concedes that petitioner is not liable for the accuracy-related penalty under sec. 6662(a) that respondent determined in the notice of deficiency (notice) issued to him for his taxable year 2013 (2013 notice).

[*3] for relief from stay in that bankruptcy proceeding, which the bankruptcy court granted on April 6, 2010.

On July 2, 2010, the bankruptcy court granted petitioner a discharge under chapter 7.

On September 22, 2010, the chancery court issued an order in which it approved the report of sale and distribution and confirmed the foreclosure sale of petitioner's then principal residence.

On April 13, 2011, Chase Bank and the Office of the Comptroller of the Currency (OCC) entered into a settlement agreement known as the Independent Foreclosure Review (IFR). Pursuant to that agreement, Chase Bank agreed to take certain actions in order to remedy certain "deficiencies and unsafe or unsound practices in [Chase Bank's] residential mortgage servicing and in the Bank's initiation and handling of foreclosure proceedings" that the OCC had identified.[3]

---

[3]Separate from and independent of the IFR, the United States and 49 States and the District of Columbia entered into consent agreements with various mortgage loan servicers, including Chase Bank, known as the National Mortgage Settlement (NMS), to settle allegations by those governments that those mortgage loan servicers had violated various Federal and State laws (NMS settlement agreements). Pursuant to the NMS settlement agreements, the mortgage loan servicers were required to pay specified amounts to certain borrowers. Pursuant to one component of those agreements, each borrower covered was to receive a payment of $1,400 from a so-called borrower payment fund. As expressly set forth in the NMS settlement agreements, the purposes of the "payments [pursuant

(continued...)

**[*4]** Petitioner was one of the borrowers harmed by those practices.

On February 28, 2013, Chase Bank and the OCC entered into an agreement to amend the IFR (February 28, 2013 amendment) by superseding article VII, titled "FORECLOSURE REVIEW", of the IFR "in the interest of providing the greatest benefit to borrowers potentially affected by the practices at the Bank addressed in the * * * [IFR] in a more timely manner than would have occurred". Pursuant to the February 28, 2013 amendment to which Chase Bank and the OCC agreed, Chase Bank agreed to establish a qualified settlement fund (QSF) within the meaning of section 1.468B-1, Income Tax Regs., with certain other lenders that had also entered into certain other agreements with the OCC from which payments were to be made to those borrowers who had been harmed by Chase Bank's (as well as certain other lenders') banking practices and who had pending or completed foreclosures with respect to their primary residences during the period January 1, 2009, through December 31, 2010. Petitioner was one of the borrowers who received a payment from the QSF, which is the payment at issue here.

---

[3](...continued)
to the NMS] * * * are remedial and relate to the reduction in the proceeds deemed realized by borrowers for tax purposes from the foreclosure sale of residential properties owned by the borrowers allegedly resulting from the allegedly unlawful conduct of" the mortgage loan servicers.

[*5]   Pursuant to the IFR and the February 28, 2013 amendment, a borrower was not required to show financial harm or request a review through the IFR in order to receive a payment.  The February 28, 2013 amendment expressly provided that the payments from the QSF did not "in any manner reflect specific financial injury or harm that may have been suffered by borrowers receiving payments".  Moreover, the categories for the so-called standard payment amounts set forth in a document titled "Independent Foreclosure Review Payment Agreement Details" did not include any amounts for lost equity.

A plan to distribute funds from the QSF (distribution plan) was prepared which established different categories of borrowers that were based upon different loan file characteristics and whether the borrower had requested a review through the IFR.  The OCC and the Board of Governors of the Federal Reserve System (Federal Reserve Board) determined in their sole discretion a specific payment amount, a so-called standard payout amount, for each category of borrowers. Pursuant to the distribution plan, petitioner was categorized as a borrower who did not request review through the IFR and whose mortgage loan servicer (i.e., Chase Bank) initiated or completed foreclosure with respect to the mortgage loan on petitioner's then principal residence while he was protected by Federal bankruptcy law.  (For convenience, we shall refer to the category of borrowers into which

**[*6]** petitioner was placed who did not request review through the IFR and whose mortgage loan servicer (i.e., Chase Bank) initiated or completed foreclosure while the borrower was protected by Federal bankruptcy law as petitioner's category of borrowers.) Petitioner's category of borrowers was not eligible for a payment representing lost equity. Like all borrowers so categorized, the OCC and the Federal Reserve Board had determined that the standard payout amount payable to petitioner's category of borrowers was $31,250.

On November 8, 2013, pursuant to the IFR and the February 28, 2013 amendment, the QSF issued to petitioner a check for $31,250, which he cashed. (We shall sometimes refer to the $31,250 that the QSF paid to petitioner as the $31,250 payment.)

The QSF issued to petitioner, and sent to respondent a copy of, Form 1099-MISC, Miscellaneous Income (petitioner's Form 1099), for his taxable year 2013. That form, which was accompanied by a letter to petitioner, showed that petitioner has "Other income" of $31,250 for that year and that no tax was withheld from that income. The letter that accompanied petitioner's Form 1099 gave the following explanation why the QSF had issued that form:

> In the 2013 tax year, you received a payment as a result of an agreement between federal banking regulators and your mortgage servicer in connection with an enforcement action related to deficient

**[\*7]** mortgage servicing and foreclosure processes.  Your payment included a letter explaining the breakdown of your payment and other important information and disclosures.  * * * Please visit www.independentforeclosurereview.com for tax information * * *.

\*       \*       \*       \*       \*       \*       \*

Below is your IRS Form 1099-MISC, which you will need when you file your tax return for the period January 1, 2013 through December 31, 2013.  * * * If you have questions about the taxability of your payment, you should contact a tax advisor.

Petitioner timely filed Form 1040, U.S. Individual Income tax Return, for his taxable year 2013.  In that return, petitioner did not include in gross income the $31,250 that he received from the QSF pursuant to the IFR and the February 28, 2013 amendment.

In the 2013 notice that respondent issued to petitioner, respondent determined, inter alia, that the $31,250 payment is includible in gross income.

## Discussion

Petitioner bears the burden of proving that the determination in the 2013 notice that remains at issue, i.e., the $31,250 payment is includible in gross income for petitioner's taxable year 2013, is erroneous.[4]  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

---

[4]We allowed the parties to file briefs.  Petitioner chose not to do so.

**[\*8]** Section 61(a) defines the term "gross income" in general to mean "all income from whatever source derived". It is axiomatic that a taxpayer's accessions to wealth are presumed to be includible in gross income. See, e.g., Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 430-431 (1955). Accessions to wealth may be excluded from gross income only if the taxpayer establishes that the Code specifically provides such an exclusion. See id.

In determining the tax treatment of a payment to settle a claim, we must ask "[i]n lieu of what were the damages awarded"? Raytheon Prod. Corp. v. Commissioner, 144 F.2d 110, 113 (1st Cir. 1944), aff'g 1 T.C. 952 (1943).

Section 468B and the regulations thereunder provide special rules for the taxation of a designated settlement fund, like the QSF. Pursuant to section 1.468B-4, Income Tax Regs., whether a distribution from a designated settlement fund, like the QSF, is includible in a payee's gross income is generally determined by reference to the claim in respect of which the distribution is made and as if the distribution were made directly to the payee by the transferor to the designated settlement fund.

The $31,250 payment that petitioner received from the QSF was a payment to remedy certain "deficiencies and unsafe or unsound practices in [Chase Bank's] residential mortgage servicing and in the Bank's initiation and handling of

[*9] foreclosure proceedings" that the OCC had identified.  Pursuant to the IFR and the February 28, 2013 amendment, a borrower was not required to show financial harm or request a review through the IFR in order to receive a monetary payment.  The February 28, 2013 amendment expressly provided that the payments from the QSF did not "in any manner reflect specific financial injury or harm that may have been suffered by borrowers receiving payments".  Moreover, the categories for the so-called standard payment amounts set forth in a document titled "Independent Foreclosure Review Payment Agreement Details" did not include any amounts for lost equity.

The distribution plan for distributions from the QSF established different categories of borrowers that were based upon different loan file characteristics and whether the borrower requested a review through the IFR.  The OCC and the Federal Reserve Board determined in their sole discretion a specific payment amount, a so-called standard payout amount, for each category of borrowers. Pursuant to the distribution plan, petitioner was categorized as a borrower who did not request review through the IFR and whose mortgage loan servicer (i.e., Chase Bank) initiated or completed foreclosure with respect to the mortgage loan on petitioner's then principal residence while he was protected by Federal bankruptcy law.  Petitioner's category of borrowers was not eligible for a payment represent-

[*10] ing lost equity. Like all borrowers so categorized, the OCC and the Federal Reserve Board had determined that the standard payout amount payable to petitioner's category of borrowers was $31,250.

The fully stipulated record is devoid of evidence establishing that the $31,250 payment was, or was intended to be, a deemed increase or decrease in the amount realized by petitioner from the foreclosure with respect to the mortgage loan on his then principal residence.[5] Nor does that record contain any evidence establishing that petitioner is entitled under a specific Code section to exclude that payment from gross income.

---

[5]Although petitioner does not rely on Rev. Rul. 2014-2, 2014-2 I.R.B. 255, we address it briefly. That ruling considered the tax treatment of payments made pursuant to the NMS, which was totally separate from and independent of the IFR. See supra note 3. In Rev. Rul. 2014-2, supra, the Internal Revenue Service (IRS) answered the question "[i]n lieu of what were the damages [payments pursuant to the NMS] awarded", Raytheon Prod. Corp. v. Commissioner, 144 F.2d 110, 113 (1st Cir. 1944), aff'g 1 T.C. 952 (1943), as follows: "Here, as reflected in the [NMS] settlement documents, the NMS Payment from the Fund is an additional amount realized on the foreclosure of the borrower's principal residence. That amount realized is used to determine any gain or loss realized under * * * [section] 1001, including gain that may be excluded under * * * [section] 121." The payments pursuant to the NMS that the IRS analyzed in Rev. Rul. 2014-2, supra, are materially distinguishable from the payments pursuant to the IFR and the February 28, 2013 amendment, such as the $31,250 payment that petitioner received. Consequently, Rev. Rul. 2014-2, supra, does not control the tax treatment of that payment.

**[*11]** On the record before us, we find that petitioner is required to include in gross income for his taxable year 2013 the $31,250 payment that he received.

We have considered all of the contentions and arguments of the parties that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing and the concession of respondent,

Decision as to the deficiency will be entered for respondent and as to the accuracy-related penalty under section 6662(a) will be entered for petitioner.