# United States Tax Court

T.C. Memo. 2023-23

KEVIN B. CHEAM AND JULIE LIM,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

———————

Docket Nos. 18650-17, 24734-18,　　　　　　Filed February 27, 2023.
11349-20.

———————

Kevin B. Cheam and Julie Lim, pro sese.

*Erik W. Nelson*, *Kimberly L. Clark*, *Catherine J. Caballero*, *Janice B. Geier*, and *Kelley A. Blaine*, for respondent.


## MEMORANDUM FINDINGS OF FACT AND OPINION

BUCH, *Judge*: Kevin B. Cheam and Julie Lim operated a grocery business during the years at issue, 2013 through 2016. After examination, the Commissioner determined unreported gross receipts and disallowed expense deductions claimed on Schedule C, Profit or Loss From Business, for each year at issue; he also disallowed all costs of goods sold for 2014 through 2016. Mr. Cheam and Ms. Lim failed to establish nontaxable sources of income or substantiate expenses beyond any concession the Commissioner made. But they established that they had costs of goods sold and supplied sufficient evidence for the Court to estimate costs of goods sold for 2014 through 2016.

[*2]                    FINDINGS OF FACT

## I.    *Introduction*

Married petitioners Mr. Cheam and Ms. Lim operate Lion Supermarket in Stockton, California. Lion Supermarket is a Schedule C grocery business that also provides MoneyGram and check cashing services. Mr. Cheam and Ms. Lim earned income from Lion Supermarket during 2013 through 2016.

## II.    *Tax Returns*

Mr. Cheam and Ms. Lim jointly filed Form 1040, U.S. Individual Income Tax Return, for each year at issue. The 2013 through 2015 returns were all prepared by the same certified public accountant. The 2016 return was prepared by a different person, Taz Theum, a social worker and part-time return preparer. Each return included a Schedule C for Lion Supermarket. On the Schedules C, Mr. Cheam and Ms. Lim reported the following gross receipts, costs of goods sold, and business expenses:[1]

| Tax Year | Gross Receipts | Cost of Goods Sold | Expenses |
|---|---|---|---|
| 2013 | $5,019,722 | $3,724,945 | $1,031,242 |
| 2014 | 3,898,595 | 2,980,328 | 839,905 |
| 2015 | 3,623,711 | 2,750,161 | 796,902 |
| 2016 | 4,171,267 | 3,208,097 | 908,753 |

They reported total tax due of $23,201, $27,169, $28,522, and $12,128 for 2013 through 2016, respectively.

## III.    *Examination*

The Commissioner examined the 2013 through 2016 returns. During the examination, Mr. Cheam and Ms. Lim failed to provide books and records sufficient to substantiate their reported income and

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

[*3] expenses. Because of that failure, the Commissioner computed their taxable income through a bank deposits analysis. The analysis included two Wells Fargo accounts that they controlled during the years at issue.

The Commissioner determined unreported gross receipts on the basis of deposits and disallowed costs of goods sold and expenses on the basis of lack of substantiation. The Commissioner also determined a section 6662 accuracy-related penalty for each year at issue. The examiner who made the initial determination to assert penalties obtained written approval from his group manager for each penalty before that penalty was first communicated to Mr. Cheam and Ms. Lim in an examination report or a notice of deficiency.

IV.    *Notices of Deficiency*

The Commissioner mailed a notice of deficiency for 2013 on June 2, 2017. Among other adjustments that are not relevant to our Opinion, the Commissioner determined additional gross receipts of $2,160,114 and disallowed various Schedule C expense deductions. The Commissioner also determined a section 6662 penalty based on an underpayment due to a substantial understatement of income tax.

The Commissioner mailed a notice of deficiency for 2014 and 2015 on September 11, 2018. Among other adjustments that are not relevant to our Opinion, the Commissioner determined additional gross receipts of $2,463,932 and $2,701,483 for 2014 and 2015, respectively, and disallowed all costs of goods sold and expense deductions. The Commissioner also determined a section 6662 penalty for each year based on an underpayment due to a substantial understatement of income tax or, alternatively, negligence.

The Commissioner mailed a notice of deficiency for 2016 on January 2, 2020. Among other adjustments not relevant to this Opinion, the Commissioner determined additional gross receipts of $1,995,336. The Commissioner disallowed the entire cost of goods sold and almost all expense deductions. The Commissioner also determined a section 6662 penalty based on an underpayment due to a substantial understatement of income tax or, alternatively, negligence.

V.    *Petitions for Redetermination*

While residing in California, Mr. Cheam and Ms. Lim filed Petitions for redetermination. In those Petitions, they challenge the

**[\*4]** notices of deficiency in their entirety. The following amounts are in dispute:

| Tax Year | Deficiency | I.R.C. § 6662 |
|----------|------------|---------------|
| 2013 | $1,329,192 | $265,838 |
| 2014 | 2,668,243 | 533,649 |
| 2015 | 2,641,682 | 528,336 |
| 2016 | 2,568,602 | 513,720 |

With respect to Lion Supermarket, they assert in their Petitions that the Commissioner erroneously determined additional gross receipts, disallowed costs of goods sold and expense deductions, and imposed section 6662 penalties. In their Petition for 2013, they allege that the Commissioner did not give them "enough time to provide supporting documentation" during the examination. In their Petitions for 2014 through 2016, they allege that they "have adequate records to substantiate" nontaxable deposits, costs of goods sold, and expenses. They also dispute various other adjustments that are not relevant to this opinion.

VI.    *Tax Court Proceeding*

Although more than five years lapsed between the filing of Mr. Cheam and Ms. Lim's first Petition and the trial of these cases, they provided little in the way of documentary support for their positions. They responded to only one of four of the Commissioner's requests for admissions.[2] The parties did not file a stipulation, and only the Commissioner complied with the Court's deadline for filing proposed trial exhibits.

We tried these cases on October 24, 2022, during the Court's San Francisco, California, trial session. Ms. Lim appeared without Mr. Cheam, and she called one witness, Mr. Theum. The only issue addressed at trial was Schedule C income.

Both parties made concessions at trial. On the basis of the documentation provided, the Commissioner conceded gross receipts in amounts equal to withdrawals to MoneyGram and Schedule C expenses. The Commissioner conceded gross receipts of $863,855, $904,564, $920,121, and $626,145 for 2013 through 2016, respectively. The

---

[2] The other three are deemed admitted. *See* Rule 90.

[*5] Commissioner also conceded all amounts deducted for utilities for 2013, and all amounts deducted for utilities, wages, and mortgage interest for 2014 through 2016. Mr. Cheam and Ms. Lim conceded office expenses for 2013.

Although the parties did not file a stipulation, Ms. Lim offered various Exhibits at trial. Mr. Cheam and Ms. Lim's Exhibits included Excel spreadsheets prepared by Mr. Theum. Mr. Theum prepared a spreadsheet purporting to substantiate cost of goods sold for each year at issue. For 2013 through 2015, he attempted to reconstruct costs of goods sold. However, those spreadsheets do not correspond to amounts reported on the 2013 through 2015 returns, which Mr. Theum was not involved in preparing. They also contain obvious errors such as duplicate entries. In other words, they are unreliable.

The 2016 spreadsheet is reliable. Mr. Theum assisted with Lion Supermarket's bookkeeping and accounting for 2016 and prepared the 2016 return. Using the 2016 spreadsheet, he kept track of monthly amounts paid to various vendors, which he determined from invoices and check registers. The total amount paid to vendors in the 2016 spreadsheet equals the cost of goods sold reported on the 2016 return.

But the 2016 spreadsheet includes amounts paid to vendors that clearly are not cost of goods sold, including gas and electric utilities, employee payroll, pest control, and waste management. After corrections for items that clearly were not cost of goods sold and items that did not reasonably appear to be cost of goods sold, the actual cost of goods sold for 2016 was $1,739,760. When considering the relationship of cost of goods sold and gross receipts, the cost of goods sold was 31.4% of adjusted gross receipts for 2016.

## OPINION

The main issue in these cases is Schedule C profit from Lion Supermarket, taking into account gross receipts, costs of goods sold, and expenses. Mr. Cheam and Ms. Lim generally argue that the Commissioner's determinations were erroneous. The Commissioner argues that his determinations were not in error, subject to the concessions above.

Mr. Cheam and Ms. Lim placed various other adjustments at issue in their Petitions but failed to put on evidence about those adjustments at trial. Because Mr. Cheam and Ms. Lim bear the burden of proof, their failure to put on evidence precludes them from prevailing

[*6] on these other adjustments. *See Nitschke v. Commissioner*, T.C. Memo. 2016-78, at *4–5, *9; *Miller v. Commissioner*, T.C. Memo. 2014-105, at *8, *10, *12–14.

I.      *Burden of Proof*

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and taxpayers bear the burden of proving error. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). In the Court of Appeals for the Ninth Circuit, to which these cases would be appealable, determinations of unreported income must be supported by a "minimal evidentiary foundation" before the presumption of correctness applies. *Weimerskirch v. Commissioner*, 596 F.2d 358, 361 (9th Cir. 1979), *rev'g* 67 T.C. 672 (1977); *see Golsen v. Commissioner*, 54 T.C. 742, 756–58 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971). "[T]he Commissioner must offer some substantive evidence showing that the taxpayer received income from the charged activity." *Weimerskirch v. Commissioner*, 596 F.2d at 360. In *Weimerskirch*, the Commissioner relied on a "naked assertion" and did not attempt to substantiate the unreported income through "other means, such as . . . bank deposits." *Id.* at 362.

Here, the Commissioner determined unreported gross receipts by using bank deposits, which are prima facie evidence of income. *Tokarski v. Commissioner*, 87 T.C. 74, 77 (1986). The record reveals that the deposits stem from Lion Supermarket, and Mr. Cheam and Ms. Lim do not dispute that the deposits arose from their business. The Commissioner's determinations are presumptively correct, and the record does not support shifting the burden back to the Commissioner. *See* I.R.C. § 7491(a).

II.     *Gross Receipts*

"[G]ross income means all income from whatever source derived . . . ." I.R.C. § 61(a); *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 429–31 (1955). Taxpayers must maintain books and records sufficient to establish their income and expenses. I.R.C. § 6001; Treas. Reg. § 1.6001-1(a). If they fail to do so, the Commissioner may reconstruct income through any reasonable method that clearly reflects income. I.R.C. § 446(b); *Petzoldt v. Commissioner*, 92 T.C. 661, 693 (1989). We have long accepted the bank deposits method for this purpose. *Clayton v. Commissioner*, 102 T.C. 632, 645–46 (1994). The bank deposits method assumes all deposits are taxable, but the Commissioner must account

[*7] for any nontaxable source or deductible expense of which he has knowledge. *Id.* Taxpayers bear the burden of proving a nontaxable source for deposits. *Barnes v. Commissioner*, T.C. Memo. 2016-212, at *32–34, *aff'd*, 773 F. App'x 205 (5th Cir. 2019). Beyond the amounts of gross receipts that the Commissioner has conceded, Mr. Cheam and Ms. Lim have failed to demonstrate that additional amounts were nontaxable.

III.   *Cost of Goods Sold*

In a merchandising business such as a grocery store, a taxpayer "may subtract cost of goods sold from gross receipts to arrive at gross income." *Mileham v. Commissioner*, T.C. Memo. 2017-168, at *35; *Kroger Co. & Subs. v. Commissioner*, T.C. Memo. 1997-2, 73 T.C.M. (CCH) 1637, 1638–39. "Cost of goods sold is the amount that the taxpayer expended to purchase or construct the inventory sold during the year." *Mileham*, T.C. Memo. 2017-168, at *35. Taxpayers must maintain books and records sufficient to establish their cost of goods sold and must substantiate all amounts claimed on their return. *Id.*

If the taxpayer lacks sufficient records but the record clearly indicates that he or she incurred cost of goods sold, the Court may supply an estimate. *Cohan v. Commissioner*, 39 F.2d 540, 543–44 (2d Cir. 1930); *Mileham*, T.C. Memo. 2017-168, at *36. The taxpayer must provide a sufficient evidentiary basis for such an estimate. *Mileham*, T.C. Memo. 2017-168, at *36. In estimating an allowable amount, "the Court bears heavily against taxpayers whose inexactitude is of their own making." *Id.*

Mr. Cheam and Ms. Lim lack sufficient records to establish their precise costs of goods sold for 2014 through 2016. Only the 2016 spreadsheet they provided to substantiate their cost of goods sold is reliable, but it contains obvious errors. That spreadsheet provides evidence to support cost of goods sold of $1,739,760 for 2016. Regarding 2014 and 2015, the spreadsheets are unreliable, but given the nature of their business, it is clear that Mr. Cheam and Ms. Lim incurred costs of goods sold greater than zero, as determined by the Commissioner.

Because the evidence for 2016 is reliable, we will supply an estimate for 2014 and 2015 based on a ratio calculated from 2016 data. We have used percentages to estimate a taxpayer's cost of goods sold, and will do so here. *See id.* at *38. For 2016, the cost of goods sold was 31.4% of Lion Supermarket's adjusted gross receipts. Thus, the

**[\*8]** allowable amount for costs of goods sold for 2014 and 2015 is 31.4% of adjusted gross receipts for each respective year.

## IV.    *Expenses*

Taxpayers bear the burden of proving that they are entitled to claimed deductions. Rule 142(a); *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992). That burden requires substantiation. *Higbee v. Commissioner*, 116 T.C. 438, 440 (2001). Taxpayers must maintain records sufficient to establish the amount of each deduction. *Rogers v. Commissioner*, T.C. Memo. 2014-141, at \*17; Treas. Reg. § 1.6001-1(a), (e).

Beyond the amounts the Commissioner conceded for Schedule C utilities, wages, and mortgage interest, Mr. Cheam and Ms. Lim failed to establish their expenses. They did not specifically address any of the disallowed expenses at trial, so they failed to meet their burden. *See Miller*, T.C. Memo. 2014-105, at \*12–13.

## V.    *Section 6662 Penalties*

The Commissioner determined a section 6662(a) accuracy-related penalty for each year at issue. Section 6662(a) provides that a taxpayer may be liable for a penalty of 20% of the portion of an underpayment of tax required to be shown on a return that is attributable to, among other things, negligence or disregard of the rules or regulations or a substantial understatement of income tax. *See* I.R.C. § 6662(b)(1) and (2). The Commissioner determined penalties based on substantial understatements for 2013 through 2016 and alternative penalties based on negligence for 2014 through 2016. Only one section 6662 accuracy-related penalty may be imposed with respect to a given portion of an underpayment. Treas. Reg. § 1.6662-2(c); *see Mileham*, T.C. Memo. 2017-168, at \*46.

Under section 7491(c), the Commissioner bears the burden of production with respect to penalties and must produce evidence that penalties are appropriate. *See Higbee*, 116 T.C. at 446. Because section 6751(b) requires managerial approval of section 6662 penalties, under our precedent, the Commissioner's burden of production includes establishing compliance with section 6751(b). *Walquist v. Commissioner*, 152 T.C. 61, 68 (2019). Once the Commissioner meets his burden, Mr. Cheam and Ms. Lim must come forward with persuasive evidence that the Commissioner's determination is incorrect or that an

**[*9]** exception applies. *See Higbee*, 116 T.C. at 446–47; *see also* I.R.C. § 6664(c)(1) (reasonable cause and good faith exception).

###### A.    *Penalty Approval*

Section 6751(b)(1) provides that no penalty shall be assessed unless the initial determination to assert penalties is approved (in writing) by the immediate supervisor of the person who made that determination. This Court has held that an "initial determination" occurs the earlier of when the Commissioner issues a notice of deficiency or when he otherwise formally communicates a decision to determine penalties. *Belair Woods, LLC v. Commissioner*, 154 T.C. 1, 14–15 (2020); *Clay v. Commissioner*, 152 T.C. 223, 248–49 (2019), *aff'd*, 990 F.3d 1296 (11th Cir. 2021). However, the Ninth Circuit arguably applies a different standard as to timing.[3] *See Laidlaw's Harley Davidson Sales, Inc. v. Commissioner*, 29 F.4th 1066 (9th Cir. 2022), *rev'g and remanding* 154 T.C. 68 (2020). In *Laidlaw's*, which involved a penalty that was not subject to deficiency procedures, the Ninth Circuit held that approval can occur after formal communication to the taxpayer, so long as it occurs before assessment. *Id.* at 1074.

Under both the Tax Court's and the Ninth Circuit's precedent, approval was timely in these cases. The initial determination to impose each penalty was approved before it was communicated to Mr. Cheam and Ms. Lim in a notice of deficiency or an examination report, so the Commissioner satisfied section 6751(b) both as interpreted by this Court and under the standard established by the Ninth Circuit.

###### B.    *Substantial Understatement*

Section 6662(d)(1)(A) defines a substantial understatement of income tax as an understatement of tax that exceeds the greater of 10% of the tax required to be shown on the tax return or $5,000. Mr. Cheam and Ms. Lim's understatements of income tax for 2013 through 2016 are substantial because they exceed $5,000 and are greater than 10% of the amount required to be shown on their returns.

---

[3] *Laidlaw's* involved an assessable penalty that was not subject to deficiency procedures. Neither our Court nor the Ninth Circuit has addressed whether the rationale of *Laidlaw's* extends to penalties that are subject to deficiency procedures. We need not reach that question in these cases.

**[\*10]** C.    *Negligence*

"'Negligence' . . . includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly." Treas. Reg. § 1.6662-3(b)(1). For 2014 through 2016, the record shows that Mr. Cheam and Ms. Lim were negligent because they failed to keep adequate books and records to substantiate Lion Supermarket's gross receipts, expenses, and costs of goods sold. *See Mileham*, T.C. Memo. 2017-168, at \*46.

D.    *Conclusion as to Penalty*

The Commissioner met his burden of production as to penalties, and Mr. Cheam and Ms. Lim failed to put on evidence that the Commissioner's determinations were erroneous or that the reasonable cause and good faith exception of section 6664(c)(1) applies. Thus, they failed to meet their burden of proof, and are liable for section 6662 accuracy-related penalties.

VI.    *Conclusion*

Mr. Cheam and Ms. Lim are entitled to costs of goods sold to offset Lion Supermarket's adjusted gross receipts in accordance with our opinion above, but they failed to establish any expenses beyond those allowed by the Commissioner. To reflect the foregoing and the parties' concessions,

*Decisions will be entered under Rule 155.*